STATE, Respondent, v. SCHULTZ, Appellant.

(217 N. W. 213.)

(File No. 6334. Opinion filed December 28, 1927.)

See, also, 210 N. W. 50.

*T. M. Bailey,* of Sioux Falls, and *Alan Bogue,* of Parker, for Appellant.

*J. D. Coon* and *C. V. Caldwell,* both of Sioux Falls, and *Buell F. Jones,* of Britton, for the State.

BURCH, J. Defendant was convicted of embezzlement in the circuit court of Moody county. From the judgment and an order denying a new trial, he appeals.

At the time of the offense alleged, appellant was president and an active officer of the First State Bank of Sioux Falls. The information charges the corporate capacity of the First State

Bank, the official relation of defendant to said bank and his active charge and control thereof, and, in substance, that on the 19th of December, 1924, in Minnehaha county, the defendant did then and there willfully, unlawfully, feloniously, and fraudulently appropriate to his own use, and to the use of others to informant unknown, money, the property of the First State Bank, in possession and control of defendant by virtue of his trust as such officer, of the value of $1,026.64, such appropriation not being in the due and lawful execution of his trust, and thereby he committed the crime of embezzlement of the funds of the bank.

Defendant demurred to the information on the grounds that it charges more than one offense and that it does not describe a public offense. The demurrer was overruled, and on the trial defendant objected to the introduction of evidence on the same grounds.

Section 4226, R. C. 1919, defines embezzlement as "the fraudulent appropriation of property by a person to whom it has been intrusted." Section 4227, R. C. 1919, provides:

"If any person being an officer, director, trustee, clerk, servant or agent of any association, society or corporation, public or private, fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust any property which he has in his possession or under his control in virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

The allegations of the information are sufficient to charge embezzlement under this section, but, because there are two special sections of our Code (section 8991 and section 9062) in the chapter on "Banking," defendant contends that the information was necessarily drawn under section 8991, and that, so far as embezzlement by bank officers is concerned, that section repeals section 4227. Appellant's position is not tenable unless there is a conflict between such special provision and the general provision above quoted. A bank officer may be prosecuted under the general statute, unless acts therein defined are by special statute not criminal when committed by a bank officer. Section 8991 enumerates certain officers and employees of a bank, and provides that any such officer or employee—

"who embezzles, abstracts, or willfully misapplies or wrongfully

diverts to his own use, through the use of accommodation notes; or credits, any of the money, funds, credits or property of the bank * * * shall be deemed guilty of a felony. * * *"

It is claimed the embezzlement in this section condemned must be "through the use of accommodation notes, or credits." Whether this is the proper construction to place upon this provision, we do not decide, for it does not appear that this provision conflicts with the general statute. The other special statute (section 9062) enumerates certain officers and employees of banks and provides that any such officer or employee—

"who embezzles, abstracts or willfully misapplies any of the money, funds, credits or property of the corporation * * * with intent to injure or defraud the corporation * * * shall be deemed guilty of a felony. * * *"

It is contended the embezzlement here prohibited must be "with intent to injure or defraud the corporation." Whether the intent here described is applicable to embezzlement or only to other acts prohibited is not decided, for this section is not in conflict with the general statute. The word "embezzlement" is used in both special statutes without being defined or limited. The court did not err in holding the information sufficient.

■ Appellant pleaded not guilty to the information and also former acquittal. The plea of former acquittal is based on the fact that defendant was prosecuted for making a false report and acquitted. Much of the evidence necessary to a conviction in this case was used in the earlier prosecution, but the charge on which appellant is now being tried is distinct from the former charge, and the mere fact that similar evidence is required to prove it does not affect the right to prosecute. There is no merit to this contention, and it will receive no further consideration.

The specific charge upon which embezzlement is predicated in this action arises from the following transaction: Appellant was indebted to one Anastos upon a promissory note (a personal obligation) in the sum of $1,000 and interest, and on or about the 19th of December, 1924, took up or paid this note by giving Anastos a check on the First State Bank drawn on the Schultz & Schultz account therein for $1,026.64. On receipt of the check Anastos surrendered the note, and shortly thereafter presented the check to the First State Bank and received payment thereof in full. At

the time the check was drawn and when it was paid there were no funds in the account of Schultz & Schultz (which had been a depositor's account in the control of the defendant), but it appears that appellant had instructed the tellers to pay the check when presented. It was paid when presented and carried for two days as a cash item; no charge against the account on which it was drawn being made. Then appellant took up the check and substituted therefor a check which he drew on the Bank of Bruce, signed "Schultz & Schultz," for $1,026.50. This substituted check was charged to the cage of the teller who handles such items and mailed with other remittances to the First National Bank of Minneapolis. The remittance containing this item was destroyed by fire before it reached Minneapolis, and consequently was never credited to the First State Bank. When the remittance to Minneapolis was made, according to the usual custom of the bank, Minneapolis was charged with the account of the several items composing such remittance. When the remittance was destroyed, Minneapolis was credited so as to restore the account, and, pending the time the bank was engaged in getting duplicates of the lost items of the remittance, the charge was carried as a cash item. No duplicate of the lost check of $1,026.50 on the Bank of Bruce was ever obtained, and consequently it was carried for a long time as a cash item; being first carried as a check outstanding in the remittance charge to the First National Bank of Minneapolis until January 6, 1925, then as a cash item until April 16, 1925, when it was lowered $26.50 by a debit slip against the Homestead Holding Company, and thereafter carried as a $1,000 cash item to July 25, 1925. It was then put in an account called "Sundry Banks" for two days, and on July 27 transferred to an account called "Special Sundry Banks," where it was carried until August 3, 1925. At this time it was taken up and included in two checks aggregating $8,100.71, drawn by appellant, which were never paid. The item was traced through devious courses, which will be unnecessary to further relate, but it will be sufficient to state that the amount of at least $1,000 of the original check to Anastos was never repaid to the bank. It is claimed these transactions constituted embezzlement of the amount of the check by appellant.

■ ■ Appellant testified in his own behalf and did not deny

the transactions as above related, but explained that at the time he drew the $1,026.50 check on the Bank of Bruce he had sufficient funds to pay it, but afterwards withdrew a large part of his account (perhaps accounting for his failure to issue a duplicate). There is no dispute as to the facts covering the specific charge. Those facts are admitted. The defense is that defendant had no criminal intent and that he secured the bank against loss. Intent as an element of the offense will be first considered.

By his check, drawn on an account without funds, appellant caused $1,026.64 of the money of the bank to be used to pay a note to Anastos, a personal obligation of defendant and not an obligation of the bank. He thereby appropriated the money to his own use. The check as such had no value. At most it was only evidence of a liability of the drawer. It was certainly not as liquid nor as valuable as the cash taken. Yet it was substituted for and counted as cash. By such act the bank was necessarily defrauded for the time being, and the act constituted a fraudulent appropriation. The Attorney General contends that the only intent necessary to complete the crime of embezzlement is the intent to do the act forbidden by the statute; that is, to fraudulently appropriate the money to his own use, and that it is not necessary for the state to show he intended to do a criminal act, or to permanently deprive the bank of the money. In this the Attorney General is right. Embezzlement is a statutory crime. U. S. v. Clark (D. C.) 76 F. 560; People v. Shearer, 143 Cal. 66, 76 P. 813; People v. Gallagher, 100 Cal. 466, 35 P. 80; Com. v. Hays, 14 Gray (Mass) 62, 74 Am. Dec. 662; McAleer v. State, 46 Neb. 116, 64 N. W. 358, 20 C. J. 408, § 2, and numerous cases there cited; 9 R. C. L. 1264, § 2; State v. Duerksen, 8 Okl. Cr. 601, 129 P. 881, 52 L. R. A. (N. S.) 1013. It is defined by our Code (section 4226, R. C. 1919) as "the fraudulent appropriation of property by a person to whom it has been intrusted." By section 4227, the section under which defendant is prosecuted, appellant was forbidden to fraudulently appropriate the money of the bank "to any use or purpose not in the due and lawful execution of his trust." There is no evidence of any transaction whereby appellant acquired the right to use the money in payment of his note. The act of taking the money and substituting therefor something of less or no value was a fraud, and, if it was intentionally done, then there was a

"fraudulent appropriation." There is no evidence of mistake, accident, or anything else which disproves an intent to do the fraudulent act. Proof of an intentional fraudulent appropriation satisfies the statute as to intent.

■ ■ For the purpose of showing intent, defendant offered to prove that on the 28th of February, 1925, defendant and his father, an officer of the bank, voluntarily conveyed to the bank property worth $68,000, in accordance with an action taken at a meeting of the board of directors on that date to be held as a hidden asset of the bank to protect and insure payment of paper in said bank amounting to more than $30,000; that the equity and balance of said property belonged to defendant and his father; that all of the officers of the bank knew and approved of carrying the item of $1,026.64 described in the information as a cash item for defendant; that in June, 1925, a meeting of the active officers of the bank was held at which the defendant stated he was having difficulty in getting money to pay the item of $1,026.64 and other cash items; that defendant had previously agreed that the property so conveyed should stand as security for all the indebtedness and cash items of defendant, and a written memorandum to that effect was executed; that in August, 1925, another meeting of the active officers of the bank was held, and defendant at that meeting stated that the Bank of Monroe was demanding payment of a note of defendant's, for $2,500, and he feared he would be sued; that the officers then said a suit against an officer of the bank would have a bad effect on the bank, and it was agreed that defendant should pay the note or as much thereof as necessary to satisfy the Bank of Monroe, and any amount so paid by defendant should be charged against the property conveyed, and that a part of said property should be conveyed to the bank and the reasonable value thereof be credited to a special fund against which the cash items of defendant should be charged, being approximately $8,100 in all, including the items mentioned in evidence in this case; that, pursuant to such agreement defendant paid the Bank of Monroe $1,000; and that a written memorandum of said agreement was signed by defendant and his father and filed with the papers of the bank.

From what has heretofore been said, there was no error in excluding this offer in so far as it pertains to intent, the purpose

for which it was said to be offered. · Nor does it tend to show a defense by establishing a lawful transaction as the facts here offered to be proven occurred long after the transaction involved in the charge, and merely show an attempt to secure the bank against loss by reason of the misappropriation of its funds.

The court excluded another offer of proof as follows:

"That, prior to the time of the execution of the check for $1,026.64, the defendant and his father, a director and officer of said bank, had deposited with said bank property of the value of more than $65,000 as security for the payment of any and all indebtedness of the defendant to said bank; that the defendant, at the time of the execution and payment of said check for $1,026.64, expected said property to stand as security for any indebtedness of the defendant evidenced by said check."

It is plain that the facts here offered, if proven, would be no defense. Appellant and his father could not deposit securities and make it lawful for appellant to take the money of the bank for his personal use in an unlimited amount, intending that such securities should secure his indebtedness so created. Taking the money under such circumstances would not be in the due and lawful execution of his trust, but would be direct violation of section 8982, R. C. 1919, of the banking law pertaining to loans to officers.

The state, to prove intent, introduced evidence of other claimed acts of embezzlement. One of these transactions we will refer to as the Karras transaction and the other the Bank of Monroe transaction. Both of these transactions were introduced into the evidence solely for the purpose of showing intent, and except for that purpose have no place in the case. A considerable portion of the record pertains to the evidence to prove these transactions on one side and the effort of the other side to explain them. Numerous errors are assigned pertaining to the proof of these claimed offenses. To set out in detail the evidence, to establish and refute each, and then discuss the assignments in detail, would make this opinion too long.

The record and assignments of error pertaining to these transactions have been carefully considered. In the Karras transaction an apparent misappropriation of $3,000 of the bank's funds was explained by defendant as a mistake in bookkeeping, in which a loan of Karras' savings account of $3,000 was claimed to have been

made to defendant by Karras, and that amount withdrawn without charging Karras' savings account. This, if believed by the jury, was a sufficient explanation to exonerate defendant of a criminal intent in that transaction, and the proof of that charge would therefore not tend to prove the criminal intent in the charge for which defendant was on trial. But establishing the Karras transaction as bona fide does not tend to show want of criminal intent on the charge described in the information; it simply destroys the value of that transaction to prove criminal intent. In the Bank of Monroe transaction, in which it appears that $1,000 of the bank's funds were used to make payment on defendant's personal note, defendant's explanation, shown by his testimony and offer of proof, does not exonerate him. The best that can be said of his offered explanation is that banking conditions were such that all the bank's officers thought it might be disastrous to have the president of their bank sued, and therefore they knew of and consented to a fraudulent appropriation of $1,000 of the bank's funds to prevent a suit against its president. That explanation involves the others but does not exonerate defendant.

 After the trial had been in progress for several days and the state's evidence was nearly all in, appellant applied for a continuance because of the absence of Karras. There was no showing that Karras had been subpœnaed nor of any attempt to force his attendance. On the contrary, it was shown that appellant relied on Karras' friendship and his promise to attend without process. The court denied the continuance, but did permit the testimony of Karras, taken at the trial of defendant on the charge of making a false report, to be read to the jury from a transcript of the record made by the court reporter. There was no error in denying the continuance. We do not think the showing was sufficient at that stage of the trial, and in any event there was no prejudice to appellant.

 After the testimony of Karras was read, a witness was permitted to state that Karras had made statements out of court inconsistent with his sworn testimony. No foundation for such testimony by interrogating Karras as to such statements had been laid, and it ought not to have been permitted. But, as there is no dispute as to the facts, we think no prejudice could result. The facts being conceded, only questions of law for the court remained.

The assignments of error are numerous. We have treated the principal assignments in this opinion. All others have been carefully considered, and we are satisfied the case was carefully and fairly tried without prejudicial error.

The judgment and order appealed from are therefore affirmed.

POLLEY, SHERWOOD, and BROWN, JJ., concur.

CAMPBELL, P. J., dissents.