## JAMES M. DUPREE v. STATE.

No. A-2346.  Opinion Filed March 19, 1918.

(171 Pac. 489.)

1. **ATTORNEY GENERAL—Powers and Duties—Statute.** Under section 8057, Rev. Laws 1910, it is the duty of the Attorney General, upon request of the Governor, to appear in the trial court and to institute and conduct the prosecution of particular criminal cases, and by such request the Attorney General is clothed with all the powers and duties of the county attorney in regard to the prosecution of criminal cases generally, but such request and appearance do not abrogate the powers and duties of the county attorney in regard to the particular prosecution.

2. **FORMER JEOPARDY—Sufficiency of Plea.** Where the county attorney has instituted a criminal prosecution which is pending in the superior court, and the Attorney General, upon request of the Governor, appears and institutes a prosecution for the same offense in the district court of the county, and the county attorney continues his prosecution in the superior court and secures a trial, resulting in a verdict of "not guilty" before the prosecution by the Attorney General is reached for trial, and when it is called the plea of former jeopardy is urged against the information, **held,** that the plea is well taken and should have been sustained.

*Appeal from District Court, Oklahoma County;*
*Frank Mathews, Assigned Judge.*

James M. Dupree was convicted under the statute making it an offense to keep a place for the purpose and with the intent of unlawfully selling, bartering, or giving away intoxicating liquors, and he appeals. Reversed and remanded, with directions.

*Claud Nowlin* and *William Zwick,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson* and *Jos. L. Hull,* Asst. Attys. Gen., for the State.

GALBRAITH, Special Judge.   The disposition of this appeal requires the consideration of only one of the many assignments of error set out in the petition in error, namely, the fifth assignment, which reads:

"The said district court of . Oklahoma county, Okla., erred · in requiring the defendant to proceed to trial, and in placing the defendant, J. M. Dupree, on trial for said offense in the district court of Oklahoma county, Okla., for the reason that said defendant, J. M. Dupree, had heretofore been duly tried and ·acquitted of the identical offense charged against him in said information."

It appears from the record that the Attorney General, having been requested so to do by the Governor, on the 7th day of February, 1914, filed a preliminary information in· the county court of Oklahoma county charging the plaintiff in error, with numerous other persons named in the information, with the offense of keeping a place, to wit, the second and third stories of a three-story brick building and the appurtenances thereunto belonging, located at No. 6½ North Broadway, Oklahoma City and Oklahoma · county, called the "Elite Hotel," with the unlawful intention and for the unlawful purpose of selling, bartering, and giving away spirituous and malt liquors contrary to the statute; that a preliminary examination was waived by the defendants and they were bound over to the district court of Oklahoma county; that thereafter, on the 20th day of February, 1914, the Attorney General filed in the district court of Oklahoma county an information against the plaintiff in error and the other parties named with him, wherein it was charged that on the 1st day of April, 1913, and continuing thereafter up to and including the 14th day of February, 1914, the defendants did keep a place at No. 6½ North Broadway, Oklahoma

City, known as the "Elite Hotel," with the purpose and intent of unlawfully selling, bartering, and giving away spirituous liquors, etc. The sufficiency of this information was challenged by demurrer and by plea of former jeopardy in bar. These pleas being denied, the plaintiff in error asked and was granted a severance and proceeded to trial upon his plea of not guilty, resulting in a verdict of "guilty," and a judgment entered therein assessing a fine and a prison sentence. To review which this appeal was prosecuted.

It also appears from the record that on the 3d day of December, 1913, the county attorney of Oklahoma county commenced a prosecution against the plaintiff in error and others charging the offense of keeping a place, to wit, the "Elite Hotel," in Oklahoma City, on April 1, 1913, and continuously thereafter up to a day named in December, 1913; that the preliminary hearing was waived and the defendants were bound over to the superior court of Oklahoma county; that on the 9th day of February, 1914, the county attorney of Oklahoma county filed an information in the superior court of said county against the plaintiff in error charging the offense of keeping a place, to wit, the "Elite Hotel," in Oklahoma City on the 1st day of April, 1913, and continuously thereafter up to and including the 14th day of March, 1914; that this cause was set for trial in the superior court on the 20th day of March, 1914, and the trial thereof was further continued until the 23d day of March, when a trial was had before the court and jury and a verdict returned by the jury of "not guilty," and a judgment entered upon said verdict by the court adjudging the plaintiff in error "not guilty" of the offense charged.

It is admitted that the offense charged in the information filed by the Attorney General in the district court and that filed by the county attorney in the superior court charged one and the same offense. It is urged on behalf of the state, in answer to the plea of former jeopardy set up in bar to the information filed by the Attorney General, that when the Attorney General commenced the prosecution, by filing the preliminary information in the county court, the power and authority of the county attorney to proceed with the prosecution on the information filed by him was revoked and superseded, and that any steps he might have taken in the prosecution subsequent to the filing of the information by the Attorney General were ineffectual for any purpose, and that the trial had therein could not amount to jeopardy, and therefore the plea attempting to set up the former jeopardy was properly denied.

The duties of the county attorney in regard to the prosecution of criminal cases in general are set out in section 1554, Rev. Laws 1910, as follows:

"It shall be the duty of the county attorney to appear in the district court, superior and county courts of his county and prosecute and defend, on behalf of the state or county, all actions or proceedings, civil or criminal, in which the state or county is interested or a party; and whenever the venue is changed in any criminal case, or any civil action or proceeding in which his county or the state is interested or a party, it shall be the duty of the county attorney of the county where such indictment is found, or the county interested in such civil action or proceeding, to appear and prosecute such indictment, and to prosecute or defend such civil action or proceeding in the county to which the same may be changed."

Section 8059, Rev. Laws 1910, makes it the duty of the Attorney General to consult with and advise the county attorney when requested by him "in all matters pertaining to the duties of their office."

Section 8057, Rev. Laws 1910, prescribes specific duties for the Attorney General, as follows:

"The Attorney General shall appear for the state and prosecute and defend all actions and proceedings in the Supreme Court and Criminal Court of Appeals in which the state shall be interested as a party, and shall also, when requested by the Governor or either branch of the Legislature, appear for the state and prosecute or defend in any other court or before any officer, in any cause or manner, civil or criminal, in which the state may be a party or interested, and shall attend to all civil cases remanded by the Supreme Court to any district court in which the state is a party or interested. He shall keep an office, to be furnished by the state in the same manner as the other state offices."

It was upon the request of the Governor that the Attorney General appeared and filed the information in the instant case.

This record presents the question of the effect of the appearance of the Attorney General in this prosecution upon the power and authority of the county attorney in regard to the same after such appearance. The Supreme Court of Colorado, in the case of *People v. Gibson et al.,* 53 Colo. 231, 125 Pac. 531, Ann. Cas. 1914A, 138, in discussing a statute almost identical with section 8057 above quoted, quote with approval a statement in regard to the effect of the appearance of the Attorney General in the prosecution upon the power of the county attorney therein,

from the opinion of the Supreme Court of Minnesota in *State v. Robinson,* 101 Minn. 277, 112 N. W. 269, 20 L. R. A. (N. S.) 1127, as follows:

"The statute under consideration, imposing specific duties upon county attorneys in the matter of its enforcement, is in no proper view a limitation upon, nor does it exclude, the general authority of the Attorney General upon the same subject."

And the Colorado court proceeds as follows:

"So under the law of this state district attorneys are specifically authorized, *inter alia,* to appear in all indictments, criminal cases, and proceedings which may be pending in the district court of their respective counties. Nevertheless, general authority is imposed upon the Attorney General to appear and prosecute in all cases wherein the state is a party or interested when required so to do by the Governor or General Assembly. The two provisions are not inconsistent. They may stand together. The specific duty imposed upon the district attorneys in no wise limits or excludes the general authority of the Attorney General upon the same subject."

The Supreme Court of North Dakota, in *Ex rel. Miller v. District Court of Burleigh Co. et al.,* 19 N. D. 819, 124 N. W. 417, Ann. Cas. 1912D, 935, say in regard to the duties of the Attorney General, when requested by the Governor to appear in the prosecution of criminal cases in the trial court:

"The Legislature stepped further, and, guided by the public interests, announced by another special clause of the statute cited, as one of the Attorney General's duties, that he shall, when required by the public service, or directed by the Governor, assist the county attorney of any county in the discharge of his duties. Here we have a specific direction by which the Attorney General is to do more than to exercise those supervisory powers contem-

plated by previous requirements of the law. He is to assist the county attorney in the discharge of his duties when the public service requires it, or when the Governor directs him to give such assistance.  *  *  *  Nor is there any limit whatever to the assistance to be given— no point where it is to begin or to end, except the bound of the official duty of the county attorney. Just so long as the county attorney has the duty to discharge, and just so far as he may go in discharging it, so long is it the right and obligation of the Attorney General to actively assist him in the discharge of such a duty; and equally far in executing the duties shall he go when the public service requires it, or ·when directed to assist by the Governor."

The Supreme Court of Oklahoma, in *Ex parte Kelly,* 45 Okla. 577, 146 Pac. 444, say in regard to the interpretation of section 8057, above quoted:

"If it be held, as contended by counsel for petitioner, that the authority of the Attorney General is limited to the right of appearing in proceedings already pending, it would amount to a denial of his right to appear in any case where, by reason of the failure, neglect, or refusal on the part of the local authorities to institute proceedings, the same has not been done. The purpose of this statute in our judgment is to clothe the Governor, who is vested by law with the supreme executive authority, and clothed with the power of executing the laws, in a proper case, where from any reason the law is not enforced, to put in motion the machinery of the law to maintain its authority. · Conditions might arise where local officials would refuse to enforce the law, and flagrant violations thereof might occur with impunity, unless there be some power by which these conditions could be remedied; and when, in the judgment of the Governor, the laws are not properly enforced by local officials, it was clearly contemplated by this statute that upon his request the Attorney General might in person take charge of the conditions, and in that

situation would be clothed with all the authority of the local officers, and could take any steps necessary to institute any proceedings, or carry the same on to a final determination, notwithstanding the local officials might refuse to do so."

And in the same opinion the court quotes with approval from the syllabus in the opinion of the Supreme Court of Kansas in *State v. Bowles*, 70 Kan. 821, 79 Pac. 726, 69 L. R. A. 176, to the effect that when the Attorney General has been requested by the Governor to act in such a case, the Attorney General then becomes the prosecuting attorney of that county in those proceedings.

We understand the court to mean by this language that in such condition the Attorney General becomes clothed with the same power as to the county attorney in regard to the prosecution of such cases. There is nothing in the language of the statute that would justify the inference that the Legislature intended that the request by the Governor and the appearance of the Attorney General in the prosecution of a criminal case should operate to relieve or to disqualify or to take away from the county attorney the powers conferred upon him by the statute in regard to the prosecution of criminal causes. The Attorney General being clothed with the same power as the county attorney, this power was not exclusive, but concurrent with the power conferred by the statute upon the county attorney, and was limited by the same power which limits the duty and the powers of the county attorney.

It will be observed that the situation as presented in the instant case differs from that presented in any of the cases above cited. In each of those cases there was a failure, refusal, or neglect to act on the part of the county attorney that was used as occasion for the Governor to

make the request upon the Attorney General to act. In the instant case the county attorney had not refused to act, but, on the contrary, he had acted. He had filed an information, had instituted a prosecution, and the same was pending at the time the Attorney General instituted his prosecution.

The record does not disclose why, but the fact appears that the county attorney was more diligent in the prosecution than the Attorney General. At least, he got a trial on the information he filed before the Attorney General secured a trial on his information. In the situation such as presented by the record in this case it would seem proper that the Attorney General, by reason of his larger office, and by reason of being clothed with the same authority as the county attorney by virtue of the statute and the request of the Governor, possibly should have had control in conducting the prosecution. He might have assisted the county attorney in the prosecution of the information filed by him, or he might have caused the dismissal of that information, if for any reason he thought an information filed by himself would be more effective, but he had no right to ignore the county attorney, as he apparently did, and he had no right to ignore the superior court in which the county attorney's information was pending, as he apparently did, and proceed independently upon an information filed by himself in the district court. He was not justified in disregarding the county attorney and the superior court until after the trial had in the superior court on the information presented by the county attorney, and, having done so, he could not then be heard to say that such proceedings were ineffectual because he (the Attorney General) had presented an information charging the same offense to the district court.

The trouble in this prosecution seems to have been largely a question of dignity. The Attorney General does not seem to have suggested to the county attorney that he should refrain from prosecuting his information since the Attorney General wished to and had filed an information against the parties in the district court. With this question of dignity between these high officials the plaintiff in error has nothing to do, and he seems to have been in no way responsible for this conflict of authority. He had been haled into court by the highest prosecuting officer in Oklahoma county, and also by the highest prosecuting officer of the State of Oklahoma; each pursuing him and seeking to convict him for the same offense.

Section 21 of article 2 of the Constitution of Oklahoma provides:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty, for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

In this race of diligence in the prosecution of a crime the county attorney seems to have been the more diligent; but the Attorney General cannot speculate on the result of the efforts of the county attorney to secure a conviction, and when they fail contend that the trial was ineffectual and the accused was not placed in jeopardy, and secure a conviction for the same offense at another trial on an information presented by himself and have the conviction sustained on appeal. The plea of former jeopardy was well taken and should have been sustained.

The judgment appealed from must be reversed and the cause remanded, with directions to the trial court to vacate the judgment of conviction and sustain the plea of former jeopardy and to dismiss the defendant without day.

DOYLE, P. J., and ARMSTRONG, J., concur; MATSON, J., disqualified, not participating.