# STATE OF NORTH DAKOTA, Respondent, v. FRANK C. HEATON, Appellant.

## (217 N. W. 531.)

**Grand jury — attorney general and assistants may appear before grand jury.**

1. Following State ex rel. Miller v. District Ct. 19 N. D. 819, 124 N. W. 417, Ann. Cas. 1912D, 935, it is held that the attorney general has the right to appear before the grand jury at any time when in his judgment he deems it for the best interests of the state so to do, and that each of his assistants has the same right.

**Criminal law — relevancy is main test of admissibility of evidence.**

2. Relevancy is, in the main, the test of the admissibility of evidence, and if evidence is relevant to the issue on trial, it is admissible unless shown to be subject to some rule of exclusion.

**Criminal law — when state may introduce evidence to establish collateral matters.**

3. Though the state in the trial of a criminal offense may not introduce evidence of the commission of other specific crimes merely to prove the depravity of the defendant or his criminal disposition, nevertheless, if evidence otherwise relevant is offered, the fact that incidentally it tends to establish collateral matters or to prove collateral crimes does not render it inadmissible. *Held*, for reasons stated in the opinion, that in the instant case the knowledge and intent of the defendant were in issue and his motive was relevant and that the evidence objected to by the defendant tended to establish these mental conditions and was therefore admissible, although it might also tend to prove other and collateral crimes.

**Criminal action — doctrine of res judicata applies — when rule of estoppel does not apply.**

4. The doctrine of res judicata is applicable in criminal actions; but, *held*, for reasons stated in the opinion, that the rule of estoppel by judgment does not apply when the facts upon which a former verdict was based are offered in evidence in a subsequent prosecution for a wholly different crime for the purpose

Note.—(1) As to power of attorney general under modern statute, see 2 R. C. L. 917; 1 R. C. L. Supp. 661; 4 R. C. L. Supp. 127; 6 R. C. L. Supp. 114.

(2, 3) On admissibility of relevant evidence to establish collateral issues, see 10 R. C. L. pp. 925, 927, 928; 2 R. C. L. 1110; 4 R. C. L. Supp. 679; 5 R. C. L. Supp. 572.

of establishing a state of mind on the part of the defendant and not for the purpose of proving independently the commission of the collateral offense.

Opinion filed December 31, 1927. Rehearing denied January 31, 1928.

Criminal Law, 16 C. J. § 1034 p. 543 n. 32; § 1132 p. 586 n. 98; § 1134 p. 588 n. 8; § 1139 p. 590 n. 25. Evidence, 22 C. J. § 89 p. 158 n. 53. Grand Juries, 28 C. J. § 96 p. 803 n. 88. Judgments, 34 C. J. § 1386 p. 969 n. 87, 94.

Appeal from the District Court of Grand Forks County, *Kneeshaw,* J. Defendant, convicted of making a false entry upon the books of a state banking association of which he was an officer, appeals.

Affirmed.

*Francis Murphy,* for appellant.

*George F. Shafer,* Attorney General, and *George A. Bangs,* Special Assistant Attorney General, for respondent.

NUESSLE, J. The defendant, Frank C. Heaton, was indicted by a grand jury of Cass county for that on January 14, 1921, he wilfully and knowingly subscribed and made a false statement and entry in the books of the Scandinavian American Bank of Fargo, of which he was then an officer, contrary to the provisions of § 5174, Comp. Laws 1913, as amended by chapter 57 of the Session Laws of 1915. To the charge as contained in this indictment the defendant entered a plea of not guilty. Thereafter such proceedings were had that the cause was removed from the county of Cass and came on for trial in the county of Grand Forks. A verdict of guilty resulted.

It appears that a special assistant attorney general was present before the grand jury during the taking and receiving of testimony upon which the indictment was later returned. The special assistant attorney general was not present however during the deliberations of the grand jury.

The particular charge laid against the defendant and on which he was tried, was that on January 14, 1921, the defendant made a false entry upon the books of the bank which purported to show the amount of savings deposited therein at the close of business on that day to be $2,909.03, when in fact the amount of such savings then on deposit was the sum of $46,851.30.

The evidence offered and received on the part of the state during the trial tends to establish the following facts: The Scandinavian American Bank was a banking corporation engaged in business at Fargo. The defendant was one of its assistant cashiers. As such cashier he was charged generally with the duty of looking after the business affairs of the bank, and particularly with the conduct and supervision of the savings department. He had charge of the books of this department. On January 14th he entered in the general ledger-cash of the bank a statement purporting to show the total savings then on deposit in the bank to be $2,909.03. In fact the total of such savings was at that time $46,851.30. The state proffered and the court, over the objection of the defendant, received, evidence tending to establish that in September, 1918, the defendant, having charge of the books and records of the bank, began a systematic course of falsification by which a fictitious balance was maintained in these books. This was done through the manipulation of the accounts, first of the Merchants National Mutual Fire Insurance Company, later of the Agricultural College, and finally of the savings accounts, and culminated in the entry on account of which the indictment in the instant case was returned. The original discrepancy was $300. This was increased from time to time until August, 1919, when it was $18,000. At that time the balance to the credit of the Agricultural College as shown by the books of the bank was $18,000 less than the College actually had on deposit in the bank and as shown by the reconcilement statement issued to the College. But it had become necessary under the law for the College to withdraw its deposit from the Scandinavian American Bank. So just prior to the withdrawal the true balance of the College was restored on the books of the bank by showing a deposit to its credit of $18,000, which in fact was not made. At the same time the books of the bank were made to show withdrawals from the savings account aggregating $18,000. In fact there were no such withdrawals. Thus the true balance of the Agricultural College was restored on the books of the bank, the savings deposit account was falsely depleted, and the fictitious balance was maintained in the general ledger-cash of the bank. Thereafter the defendant continued almost exclusively in charge of the savings department. He had an office or cage in which he worked when he received savings deposits. At intervals as deposits were made

he entered the same as made in the pass books of the depositors but did not show them in the deposit ledger. The deposit ledger was a loose leaf book. When deposits were made which he did not wish to appear in the ledger he removed the sheets on which the accounts thereof appeared from the ledger. Nearly one hundred of these accounts were thus abstracted and were later found in a compartment in his cage. So the savings deposit ledger did not disclose the true amount of the savings deposits but did show the amounts that were entered by the defendant from time to time in the general ledger of the bank as representing the total of such deposits. Thus the defendant continuously increased the discrepancy between the amounts of the actual savings deposits in the bank and the false totals which he maintained in the savings deposit ledger and the general ledger. On January 14th the true amount of the savings deposits as ascertained by taking into consideration the abstracted ledger sheets in connection with the remainder of the deposit ledger, was $46,851.30. The ledger, not taking into account these abstracted sheets, showed $2,909.03, and this was the amount as entered by the defendant in the general ledger-cash. The evidence as produced by the state overwhelmingly established the facts as above stated. This evidence consisted of the books and records of the bank, the abstracted ledger sheets, reconcilement statements to depositors, depositors' pass books,—relevant entries in all of these books and papers being in the handwriting of the defendant or shown to have been entered with his approval and under his direction—of written statements made by the defendant, and of the testimony of numerous witnesses, other officers of the bank, depositors, and others. In all there was a very great volume of this evidence.

When the evidence above referred to was offered by the state it was objected to by the defendant on the ground that it was so great in volume as to obscure the real point in issue; that it related to transactions too remote in point of time to have any probative value; that it established other and collateral offenses; that the matters thus established had been investigated in a prior embezzlement action, on the trial of which the defendant had been acquitted, and that all such matters were thus conclusively determined in his favor. After the evidence was received the defendant further challenged it by motions to strike which were denied.

Now it appears (from offers of proof and otherwise) that the defendant had theretofore been indicted and tried on an embezzlement charge predicated upon substantially the same evidence as was offered in the instant case. Many, but not all, of the witnesses called in the instant case, testified on the trial of the embezzlement case and gave the same testimony therein. Likewise, much of the documentary evidence received in the instant case was offered and received on the trial of the embezzlement case. On the trial of that case the defendant charged with the embezzlement of some $78,000 was found guilty of an embezzlement of less than $20. The fact of the prior trial and the verdict returned therein and that the same were grounded upon the same evidence offered and received in the instant case, was a basis for objection as interposed by the defendant to the introduction of the evidence in question. When this evidence was received the defendant sought to establish by cross-examination that the same testimony and evidence had been received on the trial of the embezzlement case and was the basis for that prosecution. On objection by the state the defendant was denied the right to thus cross-examine. Again after the state rested the defendant attempted to make the same proofs, and, among other evidence, offered the judgment roll and verdict in the embezzlement action. This evidence was rejected by the court on objection by the state. No other evidence was offered. The defendant did not testify.

The court in instructing the jury in the instant case with respect to the evidence which was thus admitted over defendant's objections, charged as follows:

"Some evidence has been introduced in this case tending to show other entries on the books of the bank, alleged to have been made by the defendant, and some evidence which may tend to show defalcations, shortages, or embezzlements, if you find there is any such. Any evidence which has been introduced along that line has been allowed for these purposes: First, for the purpose of showing the falsity of the alleged false entry charged in the indictment: Second, to show a motive for making such entry, if you find such entry was made by the defendant and was a false entry as charged in the indictment: Third, for the purpose of showing an intent on the part of the defendant to make such a false entry, if you find that he did make such false entry,

as charged in the indictment. This evidence was not allowed for the purpose of proving any other false entry or offense except the one charged in the indictment, nor was it allowed or introduced for the purpose of proving that the defendant was short in his accounts or was an embezzler."

The court further charged:

"The defendant is on trial solely on the charge of making the alleged false entry of January 14, 1921, as charged in the indictment, and that is the only offense for which he is being tried; and you should not consider any such evidence of the other alleged 'offenses except in so far as it may tend to prove the falsity of the alleged entry charged in the indictment; or as tending to prove a motive for making such entry, or the intent, if any, in making it, if you find any false entry was made as charged in the indictment.'"

On this appeal the defendant has specified a multitude of errors. These specifications, however, are directed to three principal propositions on which the defendant relies for a reversal in this court.

The defendant first challenges the right of the assistant attorney general to appear before the grand jury which indicted him and contends that on that account the indictment was subject to a motion to set aside. Section 10,666, Comp. Laws 1913, provides:

"The grand jury may at all reasonable times ask the advice of the court or of the state's attorney. The state's attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them, and may interrogate witnesses before them whenever he thinks it necessary; but no other person is permitted to be present during their sessions except the members and a witness actually under examination, and no person whomsoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

The defendant contends that under this provision of the statute only a witness under examination and the state's attorney may appear before the grand jury during their sessions; that, in the instant case, the special assistant attorney general did appear before the grand jury and on this account the indictment was subject to motion to quash pursuant to § 10,728, Comp. Laws 1913, providing that an "indictment

must be set aside by the court in which the defendant is arraigned, upon his motion. . . . (3) When a person is permitted to be present during the session of the grand jury, while the charges embraced in the indictment are under consideration, except as provided in § 10,666."

We think that this contention of the defendant may be summarily disposed of. This court long ago committed itself to the contrary (see State ex rel. Miller v. District Ct. 19 N. D. 819, 124 N. W. 417, Ann. Cas. 1912D, 935), and has since actually or impliedly approved and followed the rule thus established. See State v. Heiser, 20 N. D. 357, 127 N. W. 72; State v. White, 21 N. D. 444, 131 N. W. 261; McCue v. Equity Co-op. Pub. Co. 39 N. D. 190, 167 N. W. 225; State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745. In this connection see also People v. Gibson, 53 Colo. 231, 125 Pac. 531, Ann. Cas. 1914B, 138; People v. Looney, 314 Ill. 150, 145 N. E. 365; State ex rel. Young v. Robinson, 101 Minn. 277, 20 L.R.A. (N.S.) 1127, 112 N. W. 269; Dupree v. State, 14 Okla. Crim. Rep. 369, L.R.A.1918D, 365, 171 Pac. 489.

The defendant next contends that the evidence offered by the state as to other and prior entries in the books of the bank showing the accounts of the insurance company, the Agricultural College, and the various savings accounts, and the manipulations thereof, was inadmissible for the reason that it tended to establish collateral embezzlements and defaults not the subject of the prosecution in the instant case.

The indictment in the instant case was drawn under § 5174, Comp. Laws 1913, as amended by chapter 57, Sess. Laws 1915. This section, as amended, so far as is material, provides:

"Every officer, agent or clerk of any association organized under this chapter [chapter 28 of the Civil Code] who wilfully and knowingly subscribes or makes 'any false statements or entries in the books of such association, or knowingly subscribes or exhibits any false paper with intent to deceive any person authorized to examine as to the condition of such association, or wilfully subscribes or makes false reports' " . . . shall be punishable as provided by law.

The evidence, aside from that received over the defendant's objections now considered, clearly tends to establish that the defendant was an officer of a banking association such as is contemplated by the stat-

nte and that as such officer he made the entry here in question and that such entry was false. These matters are practically conceded. But, under the provisions of the statute and as the trial court instructed the jury, the state had the burden not only of establishing these facts, but also that the defendant knew when he made the entry that it was false and that he made it with the specific intent to deceive any person authorized to examine as to the condition of the banking association in question. In view of the objections raised by the defendant on the trial and the propositions now contended for by him on this appeal, it becomes necessary to determine whether the evidence offered by the state and received by the court over objection was admissible to establish these essential features of the state's case.

Largely considered, the rules of evidence are practical and logical. Where any matter of fact is in issue in a suit, and another fact is relevant which reasonably and naturally tends to prove or disprove the matter of fact thus in issue. So it is admissible in evidence unless subject to some rule of exclusion. There are rules, sometimes practical, and sometimes arbitrary, which render evidence otherwise logically probative, inadmissible. But, in the main, relevancy is the test of admissibility. Wigmore, Ev. 2d ed. §§ 9–23; 22 C. J. p. 158, et seq. As is said in the case of Plumb v. Curtis, 66 Conn. 154, 33 Atl. 998:

"Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience. Thayer, Ev. 2, 3: 'If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury.' Home Ins. Co. v. Weide, 11 Wall. 438, 440, 20 L. ed. 197, 198. The question as to its admission or rejection addresses itself to the court as one to be answered with a view to practical, rather than theoretical, considerations. The guiding principle is well stated in Stephen's Digest of the Law of Evidence (p. 36, chap. 1): 'The word "relevant" means that any two facts to which it is applied are so related to each other that

according to the common course of events, one, either taken by itself or in connection with other facts, proves or renders probable the past, present, or future existence or nonexistence of the other.' "

In the instant case the state had the burden of establishing not only that the entry in question was false, but also that the defendant when he made or caused it to be made knew that it was false; that is, the state must establish that it was made wilfully and knowingly and not inadvertently or accidentally. So the state sought and was permitted to show the long-continued falsification of the entries in the several records of the bank by the defendant, beginning with the original falsification of the Insurance Company account and ending with the entry of the false total of the savings deposits in the general ledger of the bank on January 14, 1921. Surely it cannot be denied that this long-continued course of falsification in the books and records of the bank tended most cogently to establish knowledge of the falsity of the entry of January 14th and to negative any accident or inadvertence in its making. It is true that the original false entry was far removed in time from the entry, the subject of the indictment. But mere lapse of time between the two entries would not of itself render the original entry inadmissible. It was the beginning of the series of falsifications resulting in the final entry. It was linked with the final entry by a multitude of similar false entries. The first standing alone might easily have been an inadvertent error; and so the last. Both being shown with all intervening falsifications, each from first to last dovetailing into the next, the possibility of accident or mistake fades. And the longer the time and the greater the number of the related falsifications, the dimmer that possibility becomes until it wholly vanishes.

Likewise, the state had the burden of establishing a specific intent on the part of the defendant when he made the entry of January 14th; that is, that such entry was made with the intent on the part of the defendant to deceive any person authorized to examine as to the condition of the bank. Likewise, it is clear that the evidence offered by the state and received by the court touching the conduct of the defendant from the time of the original falsification, tended to establish this intent. Every false entry made by him must have been intended to deceive any person who might examine the books and records of the bank. Otherwise why were they made—accident and mistake having been

negatived? When, for instance, the Agricultural College was about to withdraw its account from the bank, the bank's records showed its deposit to be $18,000 less than it actually was. Now what was done? An entry was made showing a deposit of $18,000 on that date to the credit of the Agricultural College account. In fact no such deposit was made. The effect of this fictitious deposit was to restore on the books of the bank the balance which the College actually had therein. But this was only one side of a double entry. In order that the books of the bank might balance it was necessary that there be a countervailing entry for a like amount, and this was brought about by falsely showing withdrawals from the savings accounts of $18,000, and of necessity the total of the savings deposits was entered by the defendant as $18,000 less than they actually were. This is but an illustrative example of the many instances shown in the record. Clearly what was done in this instance was not done merely to rectify an error. Just as clearly it evidences an intention to deceive whosoever might examine the books of the bank.

The defendant being charged with having wilfully and knowingly made the false entry with intent to deceive, on a trial of this charge these questions would naturally arise: Why should he have made a false entry? At what purpose was he aiming? What reason impelled him? Failure to answer these inquiries would naturally tend to raise a doubt as to the truth of the charge. Thus his motive would be relevant, and thus evidence of facts giving rise to that motive would be relevant. And the evidence showing the long continued and elaborate course of falsification, the devices that were resorted to to carry it out, the probable consequences attendant upon it, all tends to answer that his purpose was concealment of what he had done; that his reason was fear of the consequences of discovery. For failure to conceal what he had done surely meant discovery and exposure with consequent disgrace and possible punishment.

Thus it appears that the evidence challenged by the defendant was relevant, either to establish the wilful falsity of the entry, or the motive or intent of the defendant in making the same. Of course, in the trial of a suit the issues should not be unnecessarily multiplied or complicated. And no rule is better established than that in the trial of a criminal action, the state may not introduce evidence of the commission

of other specific crimes merely to prove the depravity of the defendant or his criminal disposition. State v. Lapage, 57 N. H. 245, 24 Am. Rep. 69, 2 Am. Crim. Rep. 506; People v. Molineux, 168 N. Y. 264, 62 L.R.A. 193, 61 N. E. 286. But if the evidence offered is otherwise relevant, the mere fact that incidentally it tends to establish collateral matters or to prove collateral crimes does not render it inadmissible: "Whatever testimony tends directly to show the defendant guilty of the crimes charged, is competent, although it also tends to show him guilty of another and distinct offense. . . . A party cannot by multiplying his crime diminish the volume of competent testimony against him." State v. Adams, 20 Kan. 311. And so, generally, evidence is admissible to establish knowledge, intent, or motive, though such evidence may tend to prove other and collateral crimes. State v. Fallon, 2 N. D. 510, 52 N. W. 318; State v. Kent (State v. Pancoast) 5 N. D. 516, 35 L.R.A. 518, 67 N. W. 1052; State v. Murphy, 17 N. D. 48, 17 L.R.A. (N.S.) 609, 115 N. W. 84, 16 Ann. Cas. 1133; State v. Merry, 20 N. D. 337, 127 N. W. 83; State v. McCarty, 49 N. D. 912, 194 N. W. 335; State v. Gummer, 51 N. D. 445, 200 N. W. 20; Wigmore, Ev. 2d ed. § 216. And so in the instant case as shown by the instructions heretofore quoted, the learned trial judge told the jury with respect to the evidence tending to show other false entries on the books of the bank and embezzlements by the defendant, that such evidence was not introduced for the purpose of showing other offenses than the one on trial, and that it could only be considered in so far as it might tend to prove the falsity of the entry charged in the indictment or the motive or intent of the defendant in making the same.

Finally, the defendant contends that though ordinarily the evidence in question might have been admissible for the purpose of showing wilful falsity, motive or intent, it was not admissible for any of those purposes in so far as it tended to establish prior embezzlements or defalcations on the part of the defendant for which he had been tried and acquitted. He further contends that the evidence having been received the verdict of acquittal in the embezzlement case should also have been admitted to rebut any inference of guilt of embezzlement that might result therefrom. These contentions are founded upon the proposition that he had been tried theretofore on a charge of embezzlement predicated upon the same evidence and acquitted on that trial.

His theory in this regard is that the verdict of acquittal in the former case was conclusive as against the effect of the same evidence in the instant case in so far as the same tended to establish a charge of embezzlement. Now the defendant had been indicted for an embezzlement and the charge was that he had embezzled some $78,000 belonging to the Scandinavian American Bank. This charge was in fact predicated upon the same evidence given by the same witnesses as in the instant case and included the amount of the discrepancy as shown by the difference between the false totals in the savings deposit ledger and on the general ledger and the actual amount of the savings deposits. On the former trial the jury returned a verdict finding the defendant guilty of an embezzlement of less than $20. So the defendant argues that the jury must have found favorably to him in the embezzlement case respecting this particular discrepancy in the savings accounts. He therefore argues that having been acquitted of this charge, evidence tending to establish it is not admissible for the purpose of showing knowledge, motive or intent in the instant case; that if such evidence be received for any purpose he should be permitted to make proof of the verdict of acquittal in order to rebut the inference of guilt that might be drawn therefrom.

Of course there can be no ground for the contention that to admit the evidence questioned in the instant case subjects the defendant to a second judicial inquiry as to his guilt on the charge of embezzlement, for here the trial is upon a charge of wilfully making a false entry with intent to deceive. The two charges are not the same. The verdict of not guilty of the embezzlement charge is not at all inconsistent with a verdict of guilty of the false entry charge, for the entry might have been false though no embezzlement occurred. So the doctrine of former jeopardy is not invoked and the defendant's contention must be based altogether upon the theory that the doctrine of res judicata applies as well and to the same extent and effect in criminal as in civil actions. Thus he reasons that a matter having been investigated in one criminal action, the verdict returned is conclusive in any subsequent prosecution where the facts on which it was based are sought to be offered as circumstantial evidence in proof of a psychological condition relevant in the trial of some other offense for which the defendant is then being

prosecuted, in so far as such facts tend to establish the offense for which he was theretofore tried.

There seems to be little question but that the doctrine of res judicata is applicable in criminal actions. Freeman, Judgm. 5th ed. §§ 648, et seq.; 34 C. J. pp. 968, et seq., and cases cited in these authorities; Mitchell v. State, 103 Am. St. Rep. 17, and note (140 Ala. 118, 37 So. 76). But there is considerable confusion in the application of the doctrine and some courts have refused to apply it to the same effect and extent in criminal as in civil actions. See Jay v. State, 15 Ala. App. 255, 73 So. 137; Mitchell v. State, 103 Am. St. Rep. 17, and note (140 Ala. 118, 37 So. 76), supra; State v. Vandemark, 77 Conn. 201, 58 Atl. 715, 1 Ann. Cas. 161; United States v. Butler (D. C.) 38 Fed. 498; Cooper v. Com. 106 Ky. 909, 45 L.R.A. 216, 90 Am. St. Rep. 275, 51 S. W. 789, 59 S. W. 524, 11 Am. Crim. Rep. 625; State v. Robinson, 16 N. J. L. 507; People v. Rodgers, 102 Misc. 437, 170 N. Y. Supp. 86, affirmed in 184 App. Div. 461, 171 N. Y. Supp. 451, affirmed in 226 N. Y. 671, 123 N. E. 882; Patterson v. State, 96 Ohio St. 90, L.R.A.1918A, 583, 117 N. E. 169; State v. Barnes, 26 S. D. 268, 128 N. W. 170; Seymour v. Com. 133 Va. 775, 112 S. E. 806.

It is to be noted that in the instant case the evidence challenged by the defendant was offered for the purpose, not of establishing any particular crime, but of proving a mental condition of the defendant which was relevant to the issues being tried. The evidence thus offered tended incidentally to establish another and different offense on account of which the defendant had been tried and acquitted. This offense was not an essential part of the offense for which the defendant was tried in the instant case. It seems to us that thus a distinction arises which makes the rule of estoppel by judgment as contended for by the defendant inapplicable. That is, we think that the rule does not apply where the facts upon which the former verdict was based are offered in evidence in a subsequent prosecution for a wholly different offense for the purpose of establishing a state of mind on the part of the defendant and not for the purpose of proving independently the commission of a collateral crime by him. See Chamberlayne, §§ 3217, et seq.; Underhill, Crim. Ev. § 629. In the instant case the evidence was offered for the purpose of proving knowledge, motive, and intent on the part of

56 N. Dak.—24.

the defendant in making the entry, the subject of the prosecution. The state was not concerned with the question of whether or not the defendant had in fact committed the crime of embezzlement. It was not attempting to establish an embezzlement. It was concerned with the mental condition of the defendant at the time that he made the alleged false entry. To establish this mental condition it showed all of the facts connected with and leading up to the making of the entry. True, this evidence tended incidentally to establish an embezzlement on the part of the defendant. True, also, that the defendant had previously been indicted for such embezzlement and on trial was found guilty of embezzlement less than $20. Though it be conceded, as the defendant contends, that this verdict was equivalent to an acquittal, nevertheless the trial and verdict were subsequent to the making of the alleged false entry. The defendant's state of mind was occasioned and was evidenced by what had theretofore occurred. The trial had not yet been had. Whether a jury would or would not adjudge him guilty of any crime on account of those occurrences was a matter then in the future. So the verdict subsequently returned had nothing to do with the defendant's state of mind at the time of making the entry. The verdict did not alter the facts. It merely evidenced the jury's conclusion as to the effect of the facts touching the defendant's innocence or guilt of an embezzlement. What determined this conclusion does not appear from the record, and cannot be shown. It seems clear to us that under these circumstances the former trial and the verdict there returned were matters wholly immaterial. This view was taken by the trial court in ruling upon the defendant's contentions. This was the theory adopted by the trial court in charging the jury with respect to the evidence in question. We therefore hold that there was no error in the trial court's rulings and that the instructions as given by him were correct.

The judgment of conviction is affirmed.

BIRDZELL, Ch. J., and CHRISTIANSON and BURR, JJ., and JANSONIUS, Dist. J., concur.

BURKE, J., did not participate, being disqualified; Honorable FRED JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.