EMMITT NORRIS v. STATE.

No. A-9581.   Nov. 29, 1939.
(96 P. 2d 540.)

Bishop, Bishop & Seay, of Seminole, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error was convicted in the district court of Seminole county of the crime of kidnaping, alleged to have been committed in said county on or about September 8, 1937, and in accordance with the verdict of the jury was sentenced to serve a term of 30 years imprisonment in the penitentiary. The information charges that:

"The defendant, Emmitt Norris, did then and there willfully, unlawfully, forcibly and feloniously and without the authority of law, kidnap one Joe Tye for the purpose of extorting money and property from the said Joe Tye by then and there willfully, unlawfully, forcibly and feloniously, seizing, confining, inveigling and kidnapping the said Joe Tye with the unlawful and felonious intent then and there upon the part of the said defendant to seize, confine, inveigle and kidnap the said Joe Tye at a point on Highway No. 48 North of the city of Seminole, and did then and thereby commit the crime of kidnapping for the purpose of Extortion; Said kidnapping being a second and subsequent offense.

"He, the said Emmitt Norris, having prior thereto been convicted in the district court of Mayes county, Oklahoma, on the 11th day of February, 1931 with the crime of robbery with firearms and then and there sentenced and committed to the state penitentiary at McAlester, Oklahoma for a period of twelve (12) years.

"He, Emmitt Norris, the said defendant, having been prior thereto on the 8th day of May, 1925, convicted with the crime of murder in the first degree in Case No. 695

of Smith Wilcox in the Ninth judicial circuit court of Polk county, Arkansas and then and there sentenced and committed to the penitentiary of the state of Arkansas at hard labor for life.

"He, Emmitt Norris, the said defendant, having been prior thereto on the 8th day of May, 1925, convicted with the crime of murder in the first degree in Case No. 696 of Nannie Wilcox in the Ninth judicial circuit court, of Polk county, Arkansas, and then and there sentenced and committed to the penitentiary of the state of Arkansas at hard labor for life.

"Contrary to" etc.

The assignments of error presented, in the brief are: Error of the court in overruling defendant's plea in abatement; error of the court in overruling defendant's demurrer to the information; error of the court in overruling defendant's demurrer to the evidence, and motion for an instructed verdict of not guilty.

The prosecution is based on section 1, art. 6, ch. 15, Session Laws 1937, 21 Okla. St. Ann. § 745, which in part provides:

"A. Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, for the purpose of extorting any money, property or thing of value or advantage from the person so seized, confined, inveigled or kidnaped, or from any other person, or in any manner threatens either by written instrument, word of mouth, message, telegraph, telephone, by placing an ad in a newspaper or by messenger, demands money or other thing of value, shall be guilty of a felony, and upon conviction shall suffer death or imprisonment in the penitentiary, not less than ten years."

Taking up the errors assigned in the order presented, the first question arises on the action of the court in overruling the so styled plea in abatement.

176

Under the Code of Criminal Procedure, a motion to quash and set aside an information takes the place of the plea in abatement at common law, a plea the subject matter of which may be any objection which could not be properly interposed by a plea in bar.

Any plea setting up absence of jurisdiction of the court is a plea to the jurisdiction. State v. Barnett, 60 Okla. Cr. 355, 69 P. 2d 77.

The purpose of a plea, no matter what nomenclature is used, is to make an issue.

In the instant case the so-called plea was submitted to the court on the following stipulation:

"It is hereby stipulated and agreed by and between the state of Oklahoma and the defendant, that the defendant, Emmitt Norris, was charged by the state of Oklahoma, in case No. 501, in the superior court of Seminole county, with the crime of kidnapping, and that on the 25th day of February, 1938, he was tried on said charge by a jury, the said jury being unable to agree and this jury being discharged by the superior court after failing to agree upon a verdict after all evidence of both the state and defendant was submitted to them, and that thereafter on the 25th day of February, 1938, the state moved for a transfer of said action to the district court of Seminole county, Oklahoma, to which motion the defendant then and there objected and the court overruled said objection and ordered said cause No. 501 transferred to the district court of Seminole county, to the action of the court the defendant then and there objected, and exceptions were allowed.

"That thereafter, while said cause No. 501 was still pending and undisposed of the state files another action before Hon. Bob Aubrey, sitting as committing magistrate, by preliminary complaint, charging the defendant with the crime of kidnapping; that he was by said committing magistrate bound to the district court of Seminole

county for trial, and said action is not action 501 as transferred from the superior court, but cause No. 4792, wherein the defendant is charged with the crime of kidnapping, but in addition thereto is charged under the habitual offender act, said habitual offender clause being omitted from or not included in the charge filed in the superior court."

The statutes of this state do not forbid a prosecution in the same court or in a different court of concurrent jurisdiction where jeopardy has not attached.

It is the well settled rule in this state that the pendency of an action and holding of the defendant for trial in one court of the state does not preclude the state from instituting another prosecution for the same offense in a court of concurrent jurisdiction. A plea of abatement, or a plea in bar because of the pendency of an action, will not lie in such latter action. Tobin v. State, 49 Okla. Cr. 265, 293 P. 575.

The rule is also stated in the case of Kerker v. Superior Court, 38 Okla. Cr. 111, 259 P. 146, 147. In the opinion it is said:

"Jeopardy does not attach until a person is put on trial before a court of competent jurisdiction under an information or indictment sufficient in form and substance to sustain a conviction and a jury has been impaneled and sworn. In re McClaskey, 2 Okla. 568, 37 P. 854; Schreiber v. Clapp, 13 Okla. 215, 74 P. 316; Dupree v. State, 14 Okla. Cr. 369, 171 P. 489 [L. R. A. 1918D, 365].

"The statutes of some of the states have settled this question by providing that, where different courts have concurrent jurisdiction of an offense, in certain contingencies one or the other shall have exclusive jurisdiction. This is illustrated in the case of State v. Chinault, 55 Kan. 326, 40 P. 662. The question here is not that which arises where the federal court and the state court have concurrent jurisdiction of the same offense. Where that situation arises, a rule of comity is followed by which the

court first acquiring jurisdiction retains it until the jurisdiction is exhausted. This was stated by Taft, C. J., in the case of Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879."

And see Griffin v. State, 57 Okla. Cr. 176, 46 P. 2d 382; Neff v. State, 39 Okla. Cr. 133, 264 P. 649.

It follows that said plea in abatement, treated as a plea in bar, on the grounds of former jeopardy and want of jurisdiction, was properly overruled.

The defendant interposed a demurrer to the information on the grounds that the facts stated are insufficient to charge the crime of kidnapping or any other public offense; that the allegations therein are wholly insufficient to charge this defendant with the commission of a second or subsequent offense, and is duplicitous, in that it attempts to charge more than one offense.

The brief filed in behalf of defendant contains no citation of authority to support this assignment.

In Davis v. State, 17 Okla. Cr. 604, 191 P. 1044, 1046, we said:

"A defendant is sufficiently informed of the nature and cause of the accusation against him if the information contains such a description of the offense charged as will enable him to make his defense and to plead the judgment in bar of any further prosecution for the same offense."

While the information in this case may be said not to be a model, we are of the opinion that it sufficiently charges the offense of which defendant was convicted. It does not charge two different offenses, and it sufficiently informed defendant of the offense he was called upon to meet so as to enable him to prepare his defense.

It follows that the trial court did not err in overruling the demurrer thereto.

Under the third assignment counsel for defendant insists that the evidence in the case does not establish that defendant committed the crime of kidnapping, but if it tended to establish a crime, it was attempting the kidnap.

In order to present the questions raised as to the sufficiency of the evidence we will briefly state the undisputed evidence in the case.

Joe Tye testified:

"I live in Lincoln county, my business is buying and selling live stock. On September 8, 1937, I bought 59 head of cattle at auction sale in Ada and hauled them to Tulsa. I hauled 16 head in my truck and hired a trailer truck to haul 43, I drove North from Ada on Highway 48, and stopped about midnight at Cotton's camp, a mile or two south of Seminole. I had my truck serviced at the station outside the cafe, where I had coffee. I went out to the truck, Emmitt Norris was standing there and asked me if I was going to Oklahoma City with the cattle, I said no I am going north, I got in my truck and drove through Seminole. About two miles north of Seminole a taxi drove around in front and tried to flag me, within the next mile the taxi flagged me again, drove slow in front and forced me to stop. Emmitt Norris got out of the taxi, came back and told me that he was in charge. Ted Coberly was with him. Norris said he wanted to look the cattle over. I said 'I have paid tickets on all of them', I supposed it was stolen cattle he was looking for, and told him to turn the taxi around and shine the lights on the cows. Coberly went back to the taxi and it turned around. They sent the taxi back, Coberly got up in the truck, Norris sat beside me and said, 'Drive her on up the road.' I drove on and said, 'Now, boys if there is a little heat under you and it is a little money you need, you don't have to hijack me, I will give you what little money I have got and go on my way with my stock.' They said 'No, we don't want that, we want them all'. 'You have got 43 head following you and we are going to have them all.' Norris said to Coberly, 'Shoot him' and I told them they were headed for the electric chair with that kind of job, that they

could not get away with it, and Norris said, 'Shoot him in two, if you have not got guts enough to shoot him, give me that gun, I have.' I drove up the road until we got some three or four miles from where they got in the truck. They told me to take a side road east. I let the truck go on by the intersection and stopped. They told me not to try any funny stuff, or they would tear me in two. I said, 'Well, if I had turned that corner the way I was going, I would have killed all of us and the stock too.' I put the truck in reverse and backed up to make the side road, and felt for the latch with my left elbow, I turned the switch off, opened the door with my left elbow and tried to fall out. Norris caught me by the throat, Coberly jumped out of the truck on the other side, went around and hit me on the back of the head. I got my feet on the ground, but I could not get my head and shoulders out. I knocked Norris loose from me; there was a little filling station across the pavement, and it was dark, I hollered, 'There is a hi-jacking going on here.' Immediately the lights came on at the filling station, and the lights were on us, I ran to the man and asked him if he had a gun, he said, 'Yes, an automatic.' I asked him to let me have it, and he said, 'I know there is a hi-jacking going on, but I don't know who is doing it.' I identified myself. He told his wife or some one in the house to call the law. Norris and Coberly got in my truck and drove on north. I got in the man's car at the filling station and we followed them, I found my truck two miles down the road, stopped on the right of the pavement, it had a flat tire and Norris and Coberly were gone, I notified the police department at Seminole and went on to Tulsa. That was on Tuesday night, and I saw the defendants Thursday night after that in front of the city hall in Seminole sitting in a car with two other fellows, who I later learned were the sheriff and under-sheriff of this county. I did not give the defendants permission to take my truck, and they took me and detained me against my will, and this was in Seminole county." .

Alfred Dillion testified:

"I drive a cab in the city of Seminole, I work from 5 o'clock in the evening until 5 in the morning, I know

Emmitt Norris. On the night of September 8, 1937, I drove him and Ted Coberly in the taxi two miles north of the city of Seminole. Then as they directed I drove in front of the truck driven by Mr. Tye, and stopped the truck. Norris got out of the taxi cab at that time, Ted Coberly paid me and told me to go back to town."

Jack Sims testified that he was chief of police, city of Seminole; that on September 9, 1937, just before 9 o'clock in the morning he arrested Emmitt Norris; that his clothes had mud and grease on nearly up to his hips.

H. A. Kohn testified that he was county attorney of Mayes county in 1931, and produced the information, verdict of the jury and judgment of the court in the case of State of Oklahoma v. Emmitt Norris, showing conviction for the crime of robbery with firearms, judgment and sentence rendered February 11, 1931, wherein said Emmitt Norris was sentenced to be confined in the penitentiary at McAlester for the term of 12 years, for said crime by him committed.

The record shows that counsel for defendant admits "that defendant is the same Emmitt Norris who was convicted of the crime of bank robbery as charged in the information."

Copies, duly authenticated, of two indictments returned by a grand jury of Polk county, Ark. against Emmitt Norris for the crime of murder, and the judgments rendered on convictions where in each case the defendant, Norris, was sentenced to imprisonment in the state penitentiary for life, were admitted in evidence.

When the state rested counsel for defendant demurred to the evidence and moved the court to direct the jury to return a verdict of not guilty, which was overruled; exception.

The defendant did not testify in his own behalf, and the only witness called on the part of the defense was Bice Merrell. He testified that he is sheriff of Seminole county; that he knew the defendant nine or ten years when they lived in the same community in Seminole county and knows the general reputation of the defendant in that community was for being a peaceable law-abiding citizen during that time, and that such reputation was good.

From the foregoing statement of the evidence and the uncontroverted facts and circumstances established, it appears that the complaining witness was by defendant and his confederate forcibly seized, confined, with threats against his life, and his property demanded, and then he was carried away. Thus it appears that the crime of kidnapping as defined in the statute hereinbefore quoted was proven in all its essential elements.

In the case of State v. Autheman, 47 Idaho, 328, 274 P. 805, 62 A. L. R. 195, the Supreme Court of Idaho held:

"One who boards another's automobile and forces such other to drive him to such places as he desires kidnaps such other within a statute defining kidnapping as the seizure of another with intent to cause him, without authority of law, to be held in service, or kept or detained against his will."

In People v. Melendrez, 25 Cal. App. 2d 490, 77 P. 2d 870, it is said:

"Evidence that motorist was removed from possession of automobile and prevented from returning thereto by force and threats against his life, until after defendants had removed key from car and departed, authorized conviction of kidnapping for the purpose of robbery, notwithstanding that nothing was allegedly taken but key to the automobile."

A careful examination of the entire record leads us to the conclusion that the errors assigned and relied upon for a reversal of the judgment are without merit in any view of the case. In our opinion defendant was fairly tried and properly convicted.

It is ordered that the judgment of the district court of Seminole county be and it is affirmed.

BAREFOOT and DAVENPORT, JJ., concur.