STATE, Respondent v. SMITH, Appellant

(181 N.W.2d 451)

(File Nos. 10701, 10702.   Opinion filed December 1, 1970)

**Bangs, McCullen, Butler, Foye & Simmons,** Rapid City, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., and **C. J. Kelly,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

PER CURIAM.

On January 24, 1968 Smith was charged in two separate indictments with violation of Section 22-38-2, SDCL 1967 (Embezzlement).   The indictment in Case No. 1933 charged that the defendant being an officer and director of Consolidated Lease Corporation from January 10, 1964 to May 12, 1967 did receive and have possession of $38,515 paid by Scoblic and Reedstrom pursuant to a lease agreement and did fraudulently appropriate and embezzle $19,250 thereof. Similarly in Case No. 1934 the indictment charged the defendant from January 3, 1964 to May 12, 1967 with receipt of

$14,350 paid by McKenna as rent to the Consolidated Lease Corporation and embezzling $10,250 thereof. Upon the plea of not guilty to each indictment the cases were consolidated for trial and tried to a jury which returned a verdict of guilty on each indictment. On December 11, 1968 the defendant was sentenced by the court to a term of three years in the state penitentiary.

The defendant, William M. Smith, was a majority stockholder, director and managing executive officer of the Consolidated Lease Corporation and the General Discount Corporation, both with head offices in Yankton, South Dakota.

The books and records of the corporation were maintained under the defendant's supervision by Alice Horlyk.

Smith was engaged in many enterprises and activities in the Yankton, South Dakota area. Among these were Smith's Enterprises, Kochi Motel, The Kegler's Club, Anderson Livestock Sales Company, Yankton Broadcasting Company, and Agricultural Improvement Supply. Some of these were incorporated and some were just business names used by the defendant. The Kegler's Club, the Kochi Motel and the Yankton Broadcasting Company are particularly pertinent to the issues involved in this appeal.

On May 1, 1959 Consolidated Lease Corporation leased to the Yankton Broadcasting Company, a corporation controlled by Smith, certain premises for a period of 20 years at a rental of $500 per month.

On November 30, 1958 Consolidated Lease Corporation leased to the defendant Smith doing business as The Kegler's Club other premises with a rental of $100 per month.

Thereafter on May 24, 1960 the defendant, Smith, sold the assets of the Yankton Broadcasting Company to two gentlemen by the names of Scoblic and Reedstrom, including the leasehold previously described but represented that the rental was $1,000 per month. Mr. Smith caused a new lease agreement to be drawn containing such terms and dated as of May 1, 1959 for a term of ten years as distinguished from the 20 years rental in the original agreement. The new lease

and the old lease were both signed by Smith as president of Consolidated Lease Corporation and as president of the Yankton Broadcasting Company. He thereupon assigned the $1,000 per month rental agreement to Messrs. Scoblic and Reedstrom and delivered the same to them.

On August 3, 1962 Smith sold The Kegler's Club to Mr. and Mrs. Walter McKenna and delivered to them a lease calling for rental of $350 per month for a term of ten years.

As each monthly rental check of $1,000 per month was received from Scoblic and Reedstrom it was stamped with the corporate endorsement of Consolidated Lease Corporation and deposited in the American State Bank at Yankton, South Dakota to the credit of the Consolidated Lease Corporation. This continued until December 1967 when, by written amendment, the rental was reduced to $750 per month after which time said $750 per month was received and deposited each month in that corporation's bank account.

Similarly each month the rental check of $350 per month from McKenna was stamped with an endorsement and deposited in the same bank account.

Pursuant to instructions the bookkeeper, Alice Horlyk, each month after depositing the rental checks in the bank account of the Consolidated Lease Corporation credited the amount of such rental payment in excess of $500 to an account payable to the defendant Smith. Also upon depositing the McKenna rent she credited to Smith's account the amount thereof in excess of $100. The result was that the Consolidated Lease Corporation got credit for only $500 per month of the rental payment from Scoblic and Reedstrom and $100 per month of the McKenna rent payment. This fact constitutes the state's entire case of embezzlement.

The defendant Smith and his bookkeeper, Alice Horlyk, were co-lessees of the Kochi Motel from the Consolidated Lease Corporation during this period. The agreed monthly rental between Smith as co-operator of the Kochi Motel and as managing director of the Consolidated Lease Corporation was $2,000 per month.

During the period of January 1964 through December 1964, the defendant Smith, individually or through his controlled business enterprises, deposited in the corporate banking account of Consolidated Lease Corporation, money totalling $27,887.49. For illustration during the month of September 1964, Smith borrowed $22,159.89 from the American State Bank of Yankton. This was a personal loan, the proceeds of which were deposited in the bank account of the Consolidated Lease Corporation and a like amount was immediately shown on the corporate books as a credit to Smith. The effect of this was that Smith borrowed $22,159.89 from the American State Bank and deposited the sum in the bank account of the Consolidated Lease Corporation but obviously considered it a loan to the corporation rather than a gift or a contribution.

On December 31, 1964 Smith had a credit on the corporation books of $72,543 and out of this the sum of $31,087.01 was transferred from Smith's account receivable from the corporation to the credit of the Kochi Motel. No cash payment was made in connection with this transfer. The state failed to develop where the credit came from or why such transfer was made, but it apparently had no effect on the payment of the Kochi Motel's rental thereafter each month.

On December 31, 1964, $41,456.23 was transferred out of the account due Smith from the Consolidated Lease Corporation to the General Discount Corporation. The Consolidated Lease Corporation was heavily indebted to the General Discount Corporation.

During 1964 the Kochi Motel paid in cash, which was deposited in the bank account of the Consolidated Lease Corporation, the sum of $24,600 by way of rental under the lease agreement between Smith, Alice Horlyk and the Consolidated Lease Corporation. During the year 1964 Scoblic and Reedstrom paid $1,000 per month rental to the Consolidated Lease Corporation for the broadcasting facility and at the same time the McKennas paid $350 per month. Out of these rentals Smith, on the books of the corporation only, was given

credit for $9,000. The balance was credited to the corporation itself.

During the year 1965 Smith individually, or through his various business enterprises, deposited in the bank account of the Consolidated Lease Corporation the sum of $13,475. On May 4, 1965 he withdrew from the bank account of this corporation the sum of $2,300. The Kochi Motel for the year 1965 paid in cash, the amount of $23,137.63, which was deposited to the account of the corporation. Scoblic and Reedstrom and the McKennas continued to pay their rent as agreed and from the rental payments Smith was credited with the sum of $9,000 on the books of the corporation. During 1965 the sum of $3,450 was transferred from Smith's credits with the corporation to the General Discount Corporattion.

During the year 1966 Smith deposited in the bank account of the corporation the sum of $8,250. As to withdrawals from the checking account by Smith of the corporation during the year 1966, there are only three questionable items. In March 1966 he withdrew $750. During April 1966 he withdrew $250, and $500. During August 1966 he withdrew $2,300. This totals $3,800 as against the $8,250 he advanced to the corporation out of his own funds.

During the year 1966 the Kochi Motel paid in cash which was deposited in the bank account of the corporation the sum of $24,000. Out of the rentals received for the radio station and from the McKennas, Smith was given credit on the books for the corporation of $9,000, most of which was transferred out of his account to an account referred to as "William Smith Stock Purchases", which the evidence shows was set up for the purpose of repurchasing stock from stockholders by the corporation rather than by Smith himself as Consolidated Lease was then planning to repurchase the stock and hold it as a treasury stock.

During the month of January 1967, Smith deposited $1,000 in the bank account of the corporation. During January 1967 there was withdrawn from the bank account two checks of $2,000 each payable to the Kochi Motel and one

check for $3,000 payable to the William Smith Special. During the year 1967 the Kochi Motel paid in cash which was credited to the account of the corporation the sum of $30,598. Rental payments were received from the broadcasting station and the McKennas as usual and $9,000 thereof was credited to Smith's account. The Kochi Motel was credited with $39,388.37 as rental paid for the year 1967. $30,598 of this was paid in cash and the balance was apparently a transfer from William Smith's credits with the corporation to that account. The state's own witness referred to this overage as "prepaid rent".

During the period of the indictments Smith deposited $50,612.49 into the corporation bank account out of his own funds and during the same period of time withdrew a total of less than $12,000. None of these withdrawals could be questioned as suspicious other than those set out above in the total amount of $10,800.

At the same time the state's evidence shows that the Kochi Motel paid in cash its rent each month which was deposited to the account of the corporation.

The defendant was not indebted to the corporation. The corporation was indebted to Smith.

Section 22-38-1, SDCL 1967, formerly Section 13.4001, SDC 1939, provides as follows:

"Embezzlement is the **fraudulent** appropriation of property by a person to whom it has been entrusted. A distinct act of taking is not necessary to constitute embezzlement, but any **fraudulent** appropriation, conversion, or use of property coming within the prohibitions of this chapter is sufficient." (Emphasis supplied).

The indictment in this case was drawn under Section 22-38-2, SDCL 1967, which provides as to pertinent parts as follows:

"If any person being an officer * * * of any * * * corporation, public or private, **fraudulently** appropriates to any use or purpose not in the due and law-

ful execution of his trust any property which he has in his possession or under his control in virtue of his trust or secretes it with a **fraudulent** intent to appropriate it to such use or purpose, he is guilty of embezzlement." (Emphasis added).

■ There is evidence that the defendant did take credit in his personal account on the books of the corporation for a substantial portion of the rent paid by Scoblic and Reedstrom and by the McKennas. The evidence does not support the charge that the appropriation was fraudulent. Nor does the evidence support any fraudulent intent to appropriate such credit to his own use and thereby deprive the corporation thereof. Actually the defendant's entire course of conduct during the period covered by the indictment is just the opposite. Why the defendant had the bookkeeper credit him with a portion of the rentals or what his intent was with regard to such credit is not obvious, but in the final analysis was nothing more than a bookkeeping entry which may have been or may not have been in violation of Section 47-30-6, SDCL 1967, which makes it a felony to falsify any books of a corporation with intent to defraud. This is a separate and distinct offense from the crime of embezzlement. See North Dakota case of State v. Heaton, 56 N.D. 357, 217 N.W. 531. Under the present evidence it is doubtful that the intent to defraud even under this latter section could be established.

■ There is no evidence of a fraudulent appropriation of corporate funds or that the corporation was deprived of any of its property by the defendant. Therefore as a matter of law the evidence was insufficient to submit the issue of guilt to the jury. Defendant's motion for a directed verdict should have been granted.

Reversed and remanded with instructions to dismiss the indictments.

All the Judges concur.

MANSON, Circuit Judge, sitting for BIEGELMEIER, J., disqualified.