[File No. 113 Cr.]

STATE OF NORTH DAKOTA, Respondent, v. JOHN GAM-MONS, Appellant.

(256 N. W. 163.)

Opinion filed July 30, 1934.

*John F. Sullivan* and *Scott Cameron* (*James M. Hanley, Jr.* of counsel) for appellant.

*P. O. Sathre,* Attorney General, *Milton K. Higgins,* Assistant Attorney General, and *George S. Register,* State's Attorney, for respondent.

MOELLRING, J. The defendant was convicted in the district court of Burleigh county of the crime of embezzlement. There was a motion

for a new trial which was denied, and defendant appeals from the judgment of conviction and also from the order denying the motion for a new trial.

The information charges, that on or about August 20, 1931, the defendant was the duly appointed, qualified and acting Secretary of the Industrial Commission of the State of North Dakota, and that he received and had in his possession as such secretary, moneys and credits of the value of $600, which were public moneys and credits belonging to said state, consisting of the proceeds from a cashier's check; and that as such secretary he was charged with the safekeeping of the same, and that he wilfully, unlawfully and feloniously converted the said moneys and credits to his own use.

The motion for a new trial is based upon certain alleged irregularities, and on this appeal are presented under seven specifications of error. The first specification is to the effect that the trial court erred in denying the motion of defendant, made at the close of the State's case, that the court advise the jury to return a verdict of not guilty, for the reason that the entire evidence of the state is not sufficient, as a matter of law, to sustain a conviction. Specifications 2 and 5 are to the effect that there is not sufficient evidence in the record to sustain a verdict of guilty. Specifications 3 and 4 predicate error on the admission of certain testimony and exhibits, and 6 and 7 challenge the regularity of the sentence and judgment imposed.

With reference to specification numbered 1, the evidence produced by the State, in the first instance, discloses that defendant was Secretary of the Industrial Commission from July, 1923, to January, 1933. On August 17, 1931, he received as such secretary a certain cashier's check (Exhibit 1) for $600, payable to "Secretary Industrial Commission." This was for interest on a certain certificate of deposit issued by the Bank of North Dakota in the sum of $20,000, and belonging to the Military History Fund of the state, which had been created or established by the Industrial Commission, in the Bank of North Dakota, out of the remainder of the Soldiers' Bonus Fund, and pursuant to a law to that effect.

The check was indorsed by the defendant as Secretary of the Industrial Commission and transferred to the First National Bank of Bis-

marck, North Dakota, August 19, 1931. The proceeds were deposited in defendant's private account in the said bank, and for which he received credit on his account in the sum of $600. The account was carried in the name of "John Gammons' Secretary," and there is evidence of previous and subsequent deposits in this account; also, evidence that Mr. Gammons had issued checks against this account, and that he received cash personally, at the bank, on execution of counter checks. The account was finally closed on December 31, 1932, the defendant receiving in cash the balance remaining of $226.86. There is also evidence to the effect that the defendant made an admission that said account was his own private account.

The State then rested its case, and the defendant thereupon made a motion requesting the court to direct and advise the jury to return a verdict of not guilty, on certain grounds, which, in substance, are to the effect that the State has failed to prove the material allegations of the information and, therefore, that the State has failed to prove the defendant guilty of the offense charged in the information.

Section 10854, Compiled Laws 1913, provides: "If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict."

Since the jury are not bound to follow the advice of the court with reference to a motion for an advised verdict of not guilty, it is not error for the court to deny such motion. State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912C, 795; State v. Albertson, 20 N. D. 512, 128 N. W. 1122.

Upon denial of the motion by the defendant for a directed verdict, the defendant then introduced evidence in support of his defense, the defendant himself taking the witness stand as the first witness in his behalf.

As assignments of error numbered 2 and 5 challenge the whole record to the effect that the offense charged in the information has not been proven by competent evidence, it is necessary, therefore, to consider what the record discloses with reference to proof of guilt on the part of the defendant.

In addition to the facts established by the State, in the first instance, the defendant admitted receipt of the proceeds from the said cashier's check and deposit in his private account, but claims that such proceeds were used by him to pay his wife for certain work which he claims she performed in the preparation of a permanent record for the state, with reference to soldiers' bonus transactions had with the state between July 1, 1928, and October 31, 1929. He contends, further, that she was employed by the Industrial Commission to prepare this record, and that the authority therefor is a resolution passed by the commission, reduced to writing and signed by the members; and he claims that in pursuance thereof his wife worked nine months, full time, at a fixed compensation of $175 per month and $100 per month, part time, for the remainder of the period. He contends that this permanent record was in the form of a record book, and was burned in the fire which destroyed the capitol building on December 28, 1930, and that the record of her appointment was destroyed in this fire. It appears, further, that the minutes and records of the Industrial Commission were also destroyed by the fire. On the other hand, the state contends that no such employment was authorized or existed but that the deposit of such funds was made by the defendant with the purpose of converting the funds to his own use. The issues of fact as thus presented to the jury were therefore quite simple.

Defendant claims that before he employed his wife to prepare such record he consulted with Mr. George Shafer, who was then the Attorney General, and also with Mr. Joseph Kitchen, the Commissioner of Agriculture and Labor, and who were, by virtue of their offices, respectively, members of the Industrial Commission, about the matter of employing his wife to prepare the record mentioned; and that a resolution was duly passed by the Industrial Commission, for which he claims both of said members voted. This is denied by Mr. Shafer, who states that no such resolution was ever presented or passed while he was a member of the commission, and that he had no knowledge that the defendant was depositing Industrial Commission funds in the First National Bank. He recalled stating to the defendant on one occasion that the funds of the Industrial Commission could not be placed legally in any depository except the Bank of North Dakota. Mr. Shafer was a member of the commission, either as Attorney Gen-

eral or as Governor, from January 1, 1923, to January 1, 1933. The trial court correctly instructed the jury that the defendant could not legally deposit the funds in any depository except the Bank of North Dakota. See § 5192a7, 1925 Supplement to the Compiled Laws 1913.

The defendant admitted, on cross-examination, that he had deposited in said private account in the First National Bank, between December 18, 1925, and December 16, 1928, about $13,000, which consisted largely of interest withdrawals from various funds of the Industrial Commission that were then on deposit in the Bank of North Dakota on certificates of deposit. Defendant contends that the reason for such deposits in his private account, was that he was using the interest withdrawals to pay expenses of the soldiers' bonus transactions, and to pay his wife for her services which he claims aggregated $2,275; and he contends, further, that in each instance, before interest was withdrawn, a resolution was presented to and passed by the Industrial Commission listing and describing the specific expenses which were to be paid from each of such interest payments, respectively. This is denied by Mr. Shafer, who testified that no such transactions or resolutions were ever had, and that he had no knowledge that Mrs. Gammons was employed for such purpose, or claimed to be so employed, until about the time of the trial of this action. Ex-Governor Maddock, who as Lieutenant Governor succeeded to the governorship upon the death of Governor Sorlie, and who was a member of the Industrial Commission by virtue of his office from August, 1928, to January, 1929, states that he had no knowledge of Mrs. Gammons' alleged employment to prepare a record of such character, and that no resolutions were ever passed by the Industrial Commission, while he was a member, authorizing withdrawals of interest payments from the Bank of North Dakota; and he also denies that any resolutions were passed authorizing the use of withdrawals for specific expenditures.

Moreover, the evidence discloses that had Mrs. Gammons performed the services as defendant claims, other state funds were available from which she could have been paid, and other funds were also at the disposal of the commission, at all times, to meet the expenses incident to soldiers' bonus discounts.

The only witnesses on the part of the defendant, with reference to the alleged preparation of a permanent record for soldiers' bonus

transactions, were the defendant, his wife and his former stenographer. The members of the Industrial Commission who testified knew nothing about any such arrangement; and in view of the long period of time claimed to be covered by the services, it is singular that no other witnesses were available or produced to establish defendant's contentions.

Defendant apparently failed to give a satisfactory explanation to the jury of the irregular handling of the funds entrusted to him as an official of the state. The jury were the sole judges of the facts and the credibility of the witnesses, and there is sufficient evidence in the record to establish the guilt of the defendant.

Section 9936, Compiled Laws 1913, reads as follows: "A distinct act of taking is not necessary to constitute embezzlement, but any fraudulent appropriation, conversion or use of property coming within the above prohibitions is sufficient."

With reference to the proof necessary to sustain a conviction of embezzlement, 20 C. J. at page 482, presents the rule thus: "As in other criminal cases the burden of proving all the elements of the crime rests on the prosecution; but where the state has made a prima facie case of embezzlement, as by proving facts which give rise to a presumption in its favor, it becomes incumbent upon the defendant to adduce evidence in denial or explanation of the incriminating circumstances." See cases cited, footnote 34.

In the case of State v. Bickford, 28 N. D. 36, 147 N. W. 407, Ann. Cas. 1916D, 140, this court said: "The crime of embezzlement, indeed, may be committed by a fraudulent failure to account for funds, as well as by their physical confiscation." Further, it is stated: "If, indeed, an officer gives funds to one who is not entitled to receive them, or loans them to one who is not entitled to receive them, he first appropriates them from the lawful channels, exercises an individual control and use over them, and commits the basic offense of a fraudulent appropriation."

In the case of State v. O'Connor, 58 N. D. 554, 226 N. W. 601, this court said:

"A person who openly and brazenly fraudulently appropriates property entrusted to him is as much guilty of embezzlement as one who does it by stealth or concealment. The ultimate question at issue was

whether the defendant had fraudulently appropriated to his use, not in the due and lawful execution of his trust, any property which he had in his possession or under his control in virtue of his trust. . . . If he did then he is guilty of embezzlement as charged in the indictment regardless of whether he did it openly or in secret."

Whether the act be done openly or concealed, the gist of the offense lies in the intent with which the act is done. If it is done with the wilful and fraudulent intent to convert the same to his own use, or to the use of one other than the owner, the unlawful taking is proved. See the following: State v. Collins, 4 N. D. 433, 61 N. W. 467; State v. Lonne, 15 N. D. 275, 107 N. W. 524; State v. Millard, 30 S. D. 169, 138 N. W. 366; State v. Schultz, 52 S. D. 209, 217 N. W. 213; 1 Brill, Cyc. Crim. Law, 911; 9 R. C. L. p. 1279, § 20.

Assignments of error numbered 3 and 4, challenge the regularity of receiving certain evidence with reference to other deposits of funds, belonging to the state, in the private account of the defendant. It is contended that these items constituted evidence of other crimes and, therefore, were not admissible.

The defendant testified, on direct examination, that the deposit of state funds, including the funds with which he is charged in the information, had been made in his private account, and only after resolutions by the Industrial Commission. The particular matters objected to by defendant were disclosed by him on cross-examination, and bear upon the intent of the defendant with reference to the $600 item charged in the information. Defendant testified that his wife had earned $2,275 in the preparation of such record, that she was not paid at regular intervals, but when interest withdrawals were authorized by the Industrial Commission, from time to time, and placed in his private account, he then paid her from such funds. The checks issued against the account were not produced, as defendant claims they were usually destroyed a month or two after being returned to him by the bank.

It is apparent, therefore, that there is a causal or connected relation between the deposit covered by the information and the other deposits of state funds in his account. Certainly, the State had a right to go into this fully on cross-examination. A statement of his said private account with the bank was received in evidence.

It is contended that the item introduced of December, 1928, is too remote, since the act alleged in the information transpired August 19, 1931. However, the defendant had testified that the latter item of August, 1931, was used to pay, in part, the services rendered by his wife from July 1, 1928, to August 31, 1929.

The state contends that the evidence with reference to the deposit of other state funds in the private account of the defendant, was for the purpose of bearing upon the intent, only, with which the defendant deposited the item in question. The trial court in its instructions to the jury, touching upon this matter, stated:

"In this case evidence was offered and received tending to show other alleged acts of conversion by the defendant in his official capacity. This evidence was received only for the purpose of throwing such light as it may upon one of the material allegations of the crime charged, namely, intent and for no other purpose. It is charged in the information that the defendant wilfully, unlawfully and feloniously converted $600. As I have stated before, the intent with which an act is done is a mental process and as such is hidden in the mind where it is conceived and is rarely susceptible of proof by direct evidence. For that reason evidence of official and private acts of the defendant in the course of his work was received and you will keep in mind that it was received on the question of the intent only and not for the purpose of proving other offenses."

In 9 Ruling Case Law, page 1295, § 41, the rule is stated thus:

"As an exception to the general rule that on the trial of persons accused of crime, proof of distinct, independent offenses is not admissible, evidence of other acts of embezzlement committed at or about the same time with the principal offense is competent to show guilty intent, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or to identify the person charged with the commission of the crime, or the absence of mistake or accident. . . . A single act charged in an indictment might be susceptible of inferences of honesty of purpose, but when viewed in the light of a long course of conduct and of repeated acts of a similar nature, intimately and directly connected with the particular accusation it would be utterly inconsistent with such inferences, and the fraudulent intent

with which the particular act was done would be demonstrated beyond all reasonable doubt. Such evidence, however, must be limited to the purpose for which it is competent."

In the comparatively recent case of State v. Flath, 61 N. D. 342, 237 N. W. 792, this court said, with reference to the introduction of independent acts which might tend to prove separate criminal offenses:

"The state, however, may bring forth any evidence having a logical and legal tendency to establish any fact in issue in such action, that is, the state may introduce any relevant, legal evidence tending to show that the defendant is guilty of the particular crime charged; and this evidence does not become inadmissible because it also shows or tends to show that the defendant is guilty of another and distinct offense. . . . And where in a criminal case some material fact, such as intent or motive, is involved, the state may offer evidence tending to establish such fact, and such evidence if otherwise admissible is not rendered inadmissible because in addition to tending to prove the particular fact in the case on trial it also tends to show that the defendant has committed some other offense. In short, evidence which is otherwise legally competent and relevant does not become inadmissible because in addition to its tendency to prove the defendant guilty of the particular crime for which he is being tried, it also shows or tends to show that he has committed some other offense."

In the case of State v. Heaton, 56 N. D. 357, 217 N. W. 531, this court said, in part:

"It is true that the original false entry was far removed in time from the entry, the subject of the indictment. But mere lapse of time between the two entries would not of itself render the original entry inadmissible. It was the beginning of the series of falsifications resulting in the final entry. It was linked with the final entry by a multitude of similar false entries. The first standing alone might easily have been an inadvertent error; and so the last. Both being shown with all intervening falsifications, each from first to last dovetailing into the next, the possibility of accident or mistake fades. And the longer the time and the greater the number of the related falsifications, the dimmer that possibility becomes until it wholly vanishes."

In the instant case, if the jury believed that the Industrial Com-

mission had not employed the defendant's wife to prepare a record for the state, and that such claims are, in fact, false, then the fact that he had deposited other funds of the state in his private account, from which he claims he made disbursements to his wife, from time to time, to the extent of more than $2,000, would be relevant as bearing upon the intent with which he deposited the $600 item involved in this action, and the intent with which he disbursed such funds. See also State v. McCarty, 49 N. D. 912, 194 N. W. 335; State v. Fallon, 2 N. D. 510, 52 N. W. 318; State v. Ewert, 52 S. D. 619, 219 N. W. 817; 16 C. J. 596.

It is our view that the trial court was justified in overruling defendant's objections to the evidence received, including the exhibits, with reference to the deposit of other state funds in the personal account of the defendant.

We come now to defendant's assignments of error numbered 6 and 7, which challenge the regularity of the judgment and sentence imposed. Under assignment No. 7 defendant contends that he was informed against and tried under § 9827, Compiled Laws 1913, but that he was sentenced under § 9930 of said Compiled Laws. The trial court imposed a sentence of seven years in the penitentiary and defendant claims that this is excessive.

The record is silent as to the particular section of our statute the information was prosecuted under, except the fact that the information itself lies aptly under § 9930, and the further fact that the trial court evidently considered that the prosecution was under said section, as the jury was instructed, in part, as follows:

"Our statute also provides that if any county treasurer or other officer or person charged with the collection, receipt, safe keeping, transfer or disbursement of public moneys or securities, or any part thereof belonging to the State or any county, precinct, district, city, town or school district shall convert to his own use, or to the use of any other person or persons, body corporate, association or party whatever, in any way whatever, such public moneys or securities, or any portion thereof by way of investment in any kind of securities, stocks, loans, property, land and merchandise, or in any form whatever not authorized by law, or shall loan the same or any portion thereof with or without interest to any company or corporation, association or in-

dividual, or if any person shall advise, aid or in any manner knowingly participate in such act, every such act shall be deemed and held in law to be an embezzlement of so much of said moneys or securities as aforesaid as shall be thus converted, used, invested, loaned or paid out as aforesaid."

This instruction is a verbatim quotation of said § 9930, except the part thereof which concerns the punishment to be imposed upon a violation of the same. No objection appears to have been made to this instruction at the time it was given, and no error is assigned thereon either in the lower court or on this appeal. This section provides a maximum punishment of twenty-one years' imprisonment in the penitentiary, and the trial court was clearly within his province in imposing a sentence of seven years.

Under defendant's assignment numbered 6, it is contended that the trial court had consulted, before passing sentence, a certain document purporting to be the result of an audit of the Industrial Commission's financial transactions covering an extended period; and it is urged that this was in violation of §§ 10,936, 10,937, 10,938 and 10,939, Compiled Laws 1913, and therefore prejudicial error.

The trial court at the time of sentence, said, in part: "While the information in this case charges the embezzlement of $600, the evidence unmistakably shows that if you embezzled $600 you also embezzled many thousand more. The audit of the Industrial Commission which I have studied this morning shows a shortage running through the course of your administration into a very large sum of money. The bank statement of the account running in the name of 'John Gammons, Secretary' in the First National Bank shows deposits up to $27,000, while the evidence shows that you cashed and deposited in your personal account some $13,000 of cashiers checks for interest received from money belonging to the state of North Dakota."

The audit of the Industrial Commission was not evidence in the case, but the bank statement of the account showing deposits up to $27,000 is a part of the exhibits, and other evidence and exhibits regularly introduced show deposits aggregating about $13,000 of cashiers' checks representing funds belonging to the state, which were placed in the private account of the defendant. It is evident that the court had in mind the evidence in the case, only, when sentence was imposed.

Except where a plea of guilty is received and there is doubt as to the degree of the offense, the sections mentioned disclose that it is entirely discretionary with the trial court whether evidence shall be received either in aggravation or mitigation of the punishment. The record in this case does not show that any request was made by the defendant to furnish evidence of a mitigating character. Had he offered to do so, we have no doubt that the trial court would have granted his request.

We do not find any prejudicial error in the record, and the judgment is affirmed.

BURR, Ch. J., and NUESSLE, BURKE and CHRISTIANSON, JJ., concur.