337 F.2d 268
 UNITED STATES of America ex rel. Edward J. MANCINI, a/k/a Edmund Mancini,
v.
Alfred T. RUNDLE, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania, Appellant.
 No. 14561.
 United States Court of Appeals Third Circuit.
 Argued February 6, 1964.
 Decided October 8, 1964.
 
 Charles Jay Bogdanoff, Philadelphia, Pa. (Paula S. Rand, Asst. Dist. Atty., Arlen Specter, Asst. Dist. Atty., Chief, Litigation Division, James C. Crumlish, Jr., Dist. Atty., Philadelphia, Pa., on the brief), for appellant.
 Donald J. Goldberg, Philadelphia, Pa. (Michael J. Rotko, Philadelphia, Pa., on the brief), for appellee.
 Before McLAUGHLIN, GANEY and SMITH, Circuit Judges.
 GANEY, Circuit Judge.
 
 
 1
 The troublesome question presented on this appeal is did the district court err in ruling that evidence obtained in the execution of an invalid search warrant was inadmissible in a Pennsylvania Court. In our opinion, it did not.
 
 
 2
 Between January of 1959 and April of 1960, several tenants of the Presidential Apartments in Philadelphia complained that their apartments had been burglarized while they were away from them. There was no evidence that the apartments had been forcibly entered. The perpetrator or perpetrators of the burglaries were believed to have used duplicate keys or a master key to gain entrance into the apartments. The Philadelphia police suspected, among others, one Edmund Mancini. They kept him and the place where he lived under surveillance.
 
 
 3
 On May 1, 1960, police officers, with the aid of a search warrant, confiscated a variety of tools belonging to Mancini at the Audio Videx Company on the third floor of a building in Philadelphia. The Company, consisting of the partnership of Mancini and Stanley Diamond, had leased the space from a furrier establishment. The tools could be used to cut keys from key blanks. On the same day, the police officers, armed with a search warrant, gained entrance to Mancini's place of residence at 209 Park Towne Apartments, South Building, in Philadelphia, without his permission. At the time no one was in the apartment. The officers made a thorough search of the apartment and seized a number of "homemade" keys and key blanks lying in a desk drawer. They also confiscated several other items, including a book on locksmithing and some material which could be used to make impressions of objects.
 
 
 4
 On or about May 16, 1960, Mancini was arrested on a warrant on a charge by one of the tenants whose apartment was claimed to have been burglarized. After a hearing before a magistrate, he was either discharged or put on bail. He was arrested again on or about June 1, on another apartment burglary charge and placed on bail. On July 29, he was rearrested and held for court. He was tried in the Court of Quarter Sessions of Philadelphia County on several bills of indictment charging him with burglary, larceny and receiving stolen goods. At the trial, which began on May 18, 1961 and lasted four days, the search warrants were not produced nor was the failure to produce them explained or accounted for. No objection was made to the validity of the search warrants nor was any attempt made to inquire into the circumstances surrounding their issuance. The keys, key blanks, book and impressionable material taken from Mancini's apartment, as well as the tool kit obtained from the business establishment were identified at the trial. The "homemade" keys were shown to have opened the door locks of the apartments claimed to have been burglarized. When the items were offered into evidence at the end of the State's case, the trial judge asked Mancini's counsel whether he had any objections and counsel then replied that he objected to their admission into evidence. This objection was promptly overruled. After all the evidence was in, the trial judge, sitting without a jury, deferred the rendering of his verdict.
 
 
 5
 On June 19, 1961, the Supreme Court handed down its decision in Mapp v. Ohio, 367 U.S. 643, p. 655, 81 S.Ct. 1684, p. 1691, 6 L.Ed.2d 1081 holding that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." On the same day the trial judge found Mancini guilty on all the bills of indictment, but deferred sentence pending post-conviction motions. Two days later Mancini filed motions in arrest of judgment and for a new trial. One of the grounds for these motions is that the objects seized under one of the search warrants were inadmissible. On October 13, 1961, he filed a petition in the County Court to quash the search warrants executed on May 1, 1960, and to suppress and strike from the trial record any reference to the objects seized under one of the warrants because the search and seizure were in violation of the due process clause of the Fourteenth Amendment to the Constitution. The petition alleged that he was ready to verify the averments therein by clear and satisfactory evidence and requested that he be given an opportunity to produce the evidence at a hearing. The trial judge heard argument upon the applicability of the Mapp decision to the criminal proceeding. Nevertheless, on December 26, 1961, he dismissed the petition, and, on January 11, 1962, he dismissed the motions in arrest of judgment and for a new trial, and sentenced Mancini to imprisonment for 3 to 15 years. Thereafter, Mancini pursued his State Court remedies in an effort to overturn the judgment and sentence of the trial court, but was unsuccessful. On April 15, 1963, he applied to the United States District Court for the Eastern District of Pennsylvania for a writ of habeas corpus. After a hearing, that court found that one of the search warrants was issued April 26, 1960, on an unsworn complaint and affidavit which recited no facts from which the issuing magistrate could have made a determination that probable cause existed. It ruled that Mancini had exhausted his State remedies, and that he was entitled to the protection of the ruling in the Mapp case. It therefore granted the writ, but stayed its issuance for 60 days to give the respondent an opportunity to seek review of the court's judgment or to retry Mancini, and set him free on bail.[1] 219 F.Supp. 549 (July 11, 1963). The Commonwealth of Pennsylvania has appealed to this court.
 
 
 6
 Since the district court ultimately granted the writ, it is necessary for us to ascertain whether Mancini had exhausted his State remedies. The district court determined that he had. On this appeal the State does not dispute that determination. The second paragraph of 28 U.S.C.A. § 2254 reads: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." Pennsylvania permits a collateral attack upon a conviction and judgment of sentence by way of habeas corpus. Mancini has not resorted to that procedure. At the time he filed his application for the writ in the district court, it is doubtful whether the Courts of Pennsylvania would have entertained a similar application on the merits in view of the decision of the Superior Court of Pennsylvania in Commonwealth v. Mancini, 198 Pa.Super. 642, 184 A.2d 279 (September 13, 1962), affirming the action of the trial court. At page 646 of its opinion, at page 281 of 184 A.2d, the Court, after noting that there was nothing in the record to show illegality in connection with the warrants, states:
 
 
 7
 "To sustain appellant's contention would require the courts of this Commonwealth to re-examine prior convictions on the mere belated allegation that the conviction involved evidence obtained as the result of an unreasonable search and seizure. The court below, in an opinion by Judge SPORKIN, very well stated: `We conclude, therefore, that since there was nothing in the record before us indicating any possible illegality in either the issuance or service of the search and seizure warrants, the decision in Mapp v. Ohio, supra, cannot be invoked to empower this Court to quash the search warrants and suppress the evidence. Nor does Mapp direct us to reopen the instant case for the purpose of inquiring into factual questions which were not raised either before or at the time of the trial.'"
 
 
 8
 The intervening cases of Commonwealth ex rel. Wilson v. Rundle, 412 Pa. 109, 194 A.2d 143, and Commonwealth v. Raymond, 412 Pa. 194, 194 A.2d 150, both decided on October 9, 1963, almost three months after the district court had allowed the writ of habeas corpus to issue, do not alter the situation. The Wilson case was a collateral attack upon a conviction which became "final" prior to Mapp. The Supreme Court of Pennsylvania held, in affirming the denial of the writ of habeas corpus, that in such a situation Mapp did not apply. Of interest here, the Court went on to say by way of dictum that it would seem only essentially fair and logical that the Mapp rule be applied retrospectively in two situations: "* * * (b) to all cases where not only the search and seizure took place prior to Mapp but where the conviction and the judgment of sentence had not become final at the time Mapp was decided (cited cases and footnote omitted)." 412 Pa. at 117, 194 A.2d at 147. The Raymond case involved a direct appeal from a pre-Mapp conviction and judgment of sentence which raised, for the first time, the issue of the illegality of a search and seizure. The Court held that "The law to be applied on direct appeal, under the circumstances presented, is that in existence as of the date of appellate decision." And then went on to rule that: "However, we do not agree that the present record justifies the conclusion that the defendant can complain of the search or that the evidence was illegally seized." 412 Pa. at 200, 194 A.2d at 153. Assuming that a State Court, conforming to those cases, would entertain, on the merits, his petition for habeas corpus, we think Mancini had exhausted his remedies in the State Courts within the meaning of 28 U.S. C.A. § 2254.
 
 
 9
 Where an applicant for habeas corpus in a federal district court has presented his Constitutional question in the State Courts by at least one available post-conviction procedure, he need not seek collateral relief based on the same evidence and issue already decided. Brown v. Allen, 344 U.S. 443, 447-450, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Also see Wade v. Mayo, 334 U.S. 672, 677-678, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948); Fay v. Noia, 372 U.S. 391, 420-422, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States ex rel. Master v. Baldi, 198 F.2d 113, 116 (C.A.3, 1952).
 
 
 10
 In the trial court, on direct appeal to the Superior Court of Pennsylvania and in the petition to the Supreme Court of Pennsylvania for allowance of an appeal from the decision of the Superior Court, as well as in his application for certiorari, Mancini raised the question of the invalidity of the search warrant and claimed that the evidence seized thereunder was inadmissible at the trial because it was obtained in violation of his rights under the due process clause of the 14th Amendment to the Constitution. The trial court refused to give him an opportunity to place before it the search warrant and accompanying affidavit, and to examine, in open court, both the police officer who obtained the warrant and the magistrate who had issued it. In his appeal proceeding, we are satisfied that he properly raised the question of the trial court's alleged improper refusal to permit him to show that the search warrant was invalid.
 
 
 11
 The State concedes here that the search warrant in question is invalid.[2] It also admits there is not only a reasonable possibility that the evidence seized under that warrant not only might have, but did contribute to Mancini's conviction.[3] Despite these concessions, it maintains that the evidence obtained as a result of the service of the invalid warrant was admissible at the trial under Pennsylvania law. Prior to the Mapp case, the Pennsylvania Courts allowed illegally obtained evidence to be admissible at a trial. Commonwealth v. Dabbierio, 290 Pa. 174, 138 A. 679 (1927); Commonwealth v. Chaitt, 380 Pa. 532, 112 A.2d 379 (1955); Elkins v. United States, 364 U.S. 206, Appendix, pp. 225, 231, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Commonwealth v. Campbell, 196 Pa.Super. 380, 386-387, 175 A.2d 324 (1960), cert. den., 371 U.S. 901, 83 S.Ct. 203, 9 L.Ed.2d 164. Hence we must answer the State's main contention that Mapp v. Ohio, supra, 367 U.S. 643, 81 S.Ct. 1684, is to have prospective application only.
 
 
 12
 Assuming momentarily that retrospective application of the Mapp rule is not mandatory upon the courts of the states, the Pennsylvania Courts would be free to adopt a policy of applying the rule retrospectively. If the extent of that retrospective application covers a situation like that of Mancini's, then we need not determine whether those Courts are required to do so. For example, see Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Were Mancini to apply to a Pennsylvania Court for a writ of habeas corpus, we believe that tribunal would, in reliance upon the Commonwealth v. Raymond case, supra, and the dictum in Commonwealth ex rel. Wilson v. Rundle, supra, apply Mapp to his case. If we are wrong in this assumption, we hold that it and the federal district courts would be required to do so. We reach this conclusion by focusing our attention, not on the particular words used by the Supreme Court in Mapp, but on what the Court did under the facts of that case. The controverted evidence in that case was seized on May 23, 1957, and later introduced into evidence during a trial when Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), was considered the law. Yet the Court did not say that since that was the situation at the time, the evidence was legally admissible, and then go on to hold that after June 19, 1961, the Wolf doctrine would no longer be applied. On the contrary, the Court held the evidence was obtained as the result of a search and seizure in violation of the Constitution, and was inadmissible in the State court. Moreover, in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and Stoner v. California, 376 U.S. 483, 84 S.Ct. 889 (1964), two cases in which the trial and conviction preceded the Mapp decision, the Court applied the federal constitutional standard in examining the entire records to determine whether the evidence seized was admissible under the circumstances of those cases.
 
 
 13
 The Courts of Appeal that have considered the question are divided. Two of them are of the view that Mapp should be applied retroactively. Hall v. Warden, Maryland Penitentiary, 313 F.2d 483, 490-497 (C.A.4, 1963), cert. den., 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032; Walker v. Peppersack, 316 F.2d 119 (C.A. 4, 1963); People v. Hurst, 325 F.2d 891, 894-897 (C.A.9, 1963). The factual situations in the first and third cases are more extreme than in the case before us. In the first case, the exhaustion or expiration of remedies of direct review had been complete prior to June 19, 1961, without the question having been raised. In the third, "[T]he trial, the motion to suppress, the denial thereof, the conviction and the exhaustion or expiration of remedies of direct review" occurred prior to the Mapp decision. The second case (Walker v. Peppersack), as far as the time when the objections were raised, is more analogous to our case. In that case, there was "a belated motion before the trial court to strike the seized evidence, the first serious challenge to the legality of the search and the use of the fruits of the search was made in a post-conviction proceeding." The Tenth and Fifth Circuits believe that Mapp is not to be applied retroactively. Gaitan v. United States, 317 F.2d 494 (C.A.10, 1963); United States ex rel. Linkletter v. Walker, 323 F.2d 11 (C.A.5, 1963), cert. granted 377 U.S. 930, 84 S.Ct. 1340, 12 L.Ed.2d 295 (May 18, 1964).
 
 
 14
 Additionally, in United States ex rel. Craig v. Myers, 329 F.2d 856 (C.A.3, 1964), a case in which an indigent Pennsylvania prisoner claimed that his conviction and sentence for robbery should be invalidated on the basis of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), because the State refused to provide him with the assistance of counsel when he appeared at his arraignment back in 1931, Judge Hastie, speaking for this court in affirming the district court's granting of the writ of habeas corpus, said:
 
 
 15
 "In actuality, all criminal convictions, all appellate judgments reversing convictions and, most notably, all judgments sustaining collateral attacks on convictions impose legal consequences upon the basis of the court's present legal evaluation of past conduct. It is irrelevant that the judge's views of what constitutes a denial of due process may have changed since the occurrence of the events in suit, or that he or some other judge might have rendered a different decision had the same matter reached his court years earlier. The petitioner is entitled to the most competent and informed decision the judge can now make whether there was fundamental unfairness in his past conviction. Our system is not so unenlightened as to require that in attaching present consequences to 1931 occurrences, a judge must ignore all of the insight that men learned in the law and observant of human behavior have acquired concerning the essentials of tolerable criminal procedure during the past 30 years."
 
 
 16
 True, Gideon announced the culmination of the evolution of a doctrine and did not overrule a previous decision, but the practical effect of that case is the same as though it did.
 
 
 17
 The State also contends that Mancini's failure to move to suppress the evidence before verdict constituted a waiver of his right to oppose its admission into evidence. If waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege", Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); Fay v. Noia, supra, 372 U.S., at 439, 83 S.Ct. 822, he did not waive his right to object in this case. Walker v. Peppersack, supra, 316 F.2d at 124-128. Counsel for Mancini did object to the admission of the evidence. As we have pointed out earlier, at the time of trial the Pennsylvania Courts allowed illegally obtained evidence to be admissible. As the law was then applied, it would have been a futile gesture for Mancini to have moved to suppress the evidence prior to trial or to have objected to its admission at the trial on the grounds of unreasonable search and seizure. See Hall v. Warden, Maryland Penitentiary, supra, 313 F.2d at 494-496. Also see United States ex rel. Campbell v. Rundle, 327 F.2d 153, 160 (C.A. 3, 1964).
 
 
 18
 In the alternative, the State maintains that since the Supreme Court of the United States has drawn a distinction between federal and state standards of reasonableness with respect to searches and seizures, the search in the instant case was reasonable under the Pennsylvania standard. Whatever difference there may be between the two, the state standard must at least measure up to or include the Constitutional standard. As the Court stated in Ker v. California, supra, 374 U.S. at 34, 83 S.Ct. at 1630:
 
 
 19
 "* * * While this Court does not sit as in nisi prius to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and the records so that it can determine for itself whether in the decision as to reasonableness the fundamental — i. e., constitutional — criteria established by this Court have been respected. The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet `the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain. See Jones v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697] (1960). Such a standard implies no derogation of uniformity in applying federal constitutional guarantees but is only a recognition that conditions and circumstances vary just as do investigative and enforcement techniques."
 
 
 20
 In support of its contention that the search and seizure were reasonable, the State offers the proposition that the same rule applicable to the search of a person should apply to the search of a house since the Fourth Amendment to the Constitution does not make a distinction between searches of a person and searches of a house. From this it argues that if a person may be arrested and his person searched without a warrant when there is probable cause, then a house should likewise be allowed to be searched without a warrant based on the same probable cause for the arrest. The existence of probable cause for the arrest is not questioned here. The police knew that on April 4, 1960, a resident of the Presidential Apartments saw a man, carrying a large suitcase, coming out of one of the apartments while the occupants were away. When the occupants returned, they claimed that their apartments had been burglarized in their absence. The following day the resident looked through a number of photographs of men suspected by the police as possibly being connected with the burglaries. She picked out Mancini's picture as resembling the man she saw leaving the apartment. The police were also aware that agents of the F.B.I. had investigated several complaints of burglaries in the suburbs of Philadelphia and learned that Mancini, who was a dance instructor, had given dancing lessons in places where some of the burglaries had been perpetrated. However, the fact that a person may be subject to a valid arrest does not give the police the right to search his home some distance away; such a search is not incident to the arrest. Agnello v. United States, 269 U.S. 20, 30-31, 46 S.Ct. 4, 70 L.Ed. 145 (1925).[4] Citing this case, the Court said in Stoner v. California, supra, 376 U.S. at 486, 84 S.Ct. at 891: "But a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." The fact that the accused has been lawfully arrested and is in custody does not justify a search, without a warrant, of another place. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). And reasonable cause for arresting an accused on the first floor of a building is not per se reasonable cause for searching his room on the second floor of the same building. United States v. Marrese, 336 F.2d 501 (C.A.3, 1964). The arrest or arrests of Mancini were made weeks after his residential apartment had been searched.
 
 
 21
 The district court did not expressly rule that the evidence obtained as the result of the illegal search and seizure should not have been admitted into evidence at the trial. Such a ruling is implicit in its holding that Mancini "stands within the protection of the Mapp case, however narrow its reach may ultimately be defined." 219 F.Supp. at 555. Under the circumstances, as we have noted earlier, it did not err in so ruling.
 
 
 22
 Accordingly, the judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Abraham L. Freedman, the judge who heard the case in the district court, has since become a member of this court, The United States Court of Appeals for the Third Circuit. However, he is disqualified from having any voice in approving the decision made by the panel of this court in this case
 
 
 [2]
 In the face of Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, decided March 23, 1964, we do not see how the State of Pennsylvania can do otherwise
 
 
 [3]
 In Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230 (1963), the Court said: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. To decide this question, it is necessary to review the facts of the case and the evidence adduced at trial." Also see Stoner v. California, supra, 376 U.S. at p. 490, n. 8, 84 S.Ct. 889
 
 
 [4]
 This same case held that a search of a person's house is valid without a search warrant if made as an incident to a lawful arrest therein. Also see Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881 (1964)