STATE of North Dakota, Plaintiff
and Appellee,

v.

James Edward FRYE, Defendant
and Appellant.

Crim. No. 551.

Supreme Court of North Dakota.

Sept. 29, 1976.

Rehearing Denied Oct. 15, 1976.

David L. Drey, State's Atty., and R. James Maxson, Asst. State's Atty., Minot, for plaintiff and appellee; argued by Mr. Drey.

Ella Van Berkom, Minot, for defendant and appellant.

ERICKSTAD, Chief Justice.

James E. Frye appeals from a judgment of the Ward County District Court based upon a jury verdict which found him guilty of theft of property, a violation of Section 12.1–23–02, N.D.C.C. The conviction was of a class C felony under Section 12.1–23–05, N.D.C.C., the value of the property being in excess of one hundred dollars. He was sentenced to serve three years in the North Dakota State Penitentiary.

Ward County Deputy Sheriff Elroy "Spike" Taylor arrested Frye without a warrant on September 30, 1975, at the Minot Air Force Base. The arrest followed a telephone conversation between Taylor and Jerry Connole, a cashier at the First National Bank of Minot. In this conversation Mr. Connole informed Deputy Taylor that James Frye had, on September 27, deposited a check in the Minot bank drawn on an account in Fairbanks, Alaska, and at the same time withdrew money from his Minot account on the strength of this deposit. Connole related to Taylor that on September 30, Frye attempted a similar transaction which aroused the suspicion of some bank employees. Connole also told Taylor he had contacted the Alaska bank and that he was informed "there is no money up there in Alaska to take care of any of these checks he has written."

Frye was taken before a magistrate, Ward County Judge Halvor L. Halvorson, on October 3, 1975.

In this appeal, Frye enumerates three issues in his brief: "1) Did the District Court of Ward County commit error in denying the Motion of Defendant for suppression of evidence and dismissal of the Complaint made prior to commencement of the trial?" "2) Did the District Court of Ward County commit error in overruling Defendant's objection to the State's reference in its opening argument to Defendant's attempt to deposit $8,000.00 and to attempt to withdraw $2,000.00?" "3) Did the District Court of Ward County commit error in denying the Motion of the Defendant to strike the testimony of the witnesses Sharon Klein and Bart Schempp with regard to the alleged attempt by Defendant to deposit a check for $8,000.00 and withdraw $2,000.00?"

Several points are argued with regard to the first stated issue.

In his brief, Frye sets out, in part, Section 29–06–15, N.D.C.C.:

"A peace officer, without a warrant, may arrest a person:

. . . . .

"3. When a felony in fact has been committed, and he has reasonable cause to believe the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

The brief then refers to the telephone conversation between Mr. Connole and Deputy Taylor prior to the arrest, the argument apparently being that this information could not constitute "reasonable cause" under Section 29–06–15, N.D.C.C.

In arguing this first issue, counsel for Mr. Frye stresses that Deputy Taylor, when he arrested Frye, said he was being arrested on *"suspicion of a felony"*. A peace officer may not arrest a person without a warrant on a mere "suspicion" that a felony has been committed, but the language used is not the important factor. What is important is that the arresting officer have the requisite reasonable cause to believe that a felony was committed by the person arrested.

The term "reasonable cause", as used in Section 29–06–15, N.D.C.C., is synonymous with the more widely used term "probable cause". *State v. Kolb*, 239 N.W.2d 815 (N.D.1976); *Witte v. Hjelle*, 234 N.W.2d 16 (N.D.1975); *State v. Salhus*, 220 N.W.2d 852 (N.D.1974). *Cf. Colling v. Hjelle*, 125 N.W.2d 453 (dissent) at 467 (N.D.1964).

The determination of whether probable cause exists is by no means an exact science. However, *State v. Chaussee*, 138 N.W.2d 788 (N.D.1965) sets forth a useful explication of the meaning of the term. *Chaussee*, at 138 N.W.2d 792, relies upon language of the United States Supreme Court emphasizing that the question of the existence of probable cause is one of practical application rather than legal abstraction:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal

technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879.

■ The test in North Dakota is as stated in *Chaussee* in paragraph 3 of its syllabus:

"3. Probable cause exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." 138 N.W.2d at 789.

*State v. Kolb, supra; Witte v. Hjelle, supra.*

Much of the preceding case law is concerned with requirements of the Fourth Amendment and focuses on the information available to the arresting officer.

It appears that neither Mr. Connole nor Deputy Taylor acted with undue haste or lack of caution, especially considering the complexity of the situation as it presented itself.

On September 30, 1975, at about 3:45 p. m., Connole received a telephone call from a teller at the bank's drive-in facility, informing him that James Frye had attempted to deposit a personal check for $8,000, drawn on a bank account in Fairbanks, Alaska, and to cash a $2,000 personal check drawn on his account in the Minot bank. Connole was told that Frye drove off when the teller would not handle the transaction.

Connole then contacted the Minot Police Department and Deputy Taylor at the Ward County Sheriff's office, both of whom informed him that Frye had a record of being a "check artist". He also discovered that Frye had, on September 27, 1975 (a Saturday), deposited in the First National Bank of Minot, a check for $2,640 drawn on the Alaska bank account, and had immediately thereafter written a check for $1,800 against the Minot account, and that Frye had come into the bank the next Monday, September 29, and had written a check for $700 on the Minot account after showing a receipt from the Minot bank for $2,640 which he had been given on September 27.

Connole contacted the First National Bank of Fairbanks and was told that James Frye had an account there, but it had been closed after he "took" them for "several hundred dollars".

Thereafter, Connole called Deputy Taylor and conveyed this information to him, whereupon Taylor went to the Air Base and arrested Frye.

■ While the particular facts and circumstances of each case must determine the existence of probable cause, *State v. Kolb, supra,* 239 N.W.2d at 818; *Witte v. Hjelle, supra,* 234 N.W.2d at 20; *Brinegar v. United States, supra,* 338 U.S. at 176, 69 S.Ct. 1302, it is beneficial to refer to *State v. Willms,* 117 N.W.2d 84 (N.D.1962), which is quite similar to the instant case, at least with regard to facts relevant to probable cause. In *Willms* the issue was decided summarily:

"Therefore, the arrest on the oral charge of the owner of the place of business which had accepted a check drawn on a bank in which the defendant had no account, was proper since such arrest was made on a charge, based upon reasonable cause, of the commission of a felony by the defendant." *State v. Willms, supra,* 117 N.W.2d at 87.

■ In the case of an arrest under a warrant, the issuing magistrate must be provided particular facts upon which to make a determination of probable cause. *State v. Erdman,* 170 N.W.2d 872, 877 (N.D. 1969); *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Although the present case involves a warrantless arrest, the Fourth Amendment demands that requirements of reliability of informants and particularity of information be at least as stringent as where an arrest warrant is obtained. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

A state standard for determining probable cause for arrest must at least measure up to the Federal Constitutional standard. *State v. Erdman, supra,* 170 N.W.2d at 877; *United States ex rel. Mancini v. Rundle,* 337 F.2d 268 (3d Cir. 1964). Subsection 3, of Section 29–06–15, N.D.C.C., meets that standard. Under subsection 3, for the arrest of James Frye to be valid, it must be shown that Mr. Connole gave Deputy Taylor sufficient facts to allow him to reasonably draw his own conclusion that there was reasonable cause to believe that a felony was committed and that Frye committed it.

Connole's position in the bank and the situation he was acting in at the time he talked to Deputy Taylor are a strong indication of his own reliability in passing the information. The information given Taylor was that James Frye had cashed one check and attempted to cash another on the Alaska account and that Connole was told by someone at the Alaska bank that there was no money in the account. Taylor also had consulted Frye's record showing a history of bad check schemes. Under these circumstances, all of which were known to the arresting officer, we believe the arresting officer had reasonable cause to believe, or probable cause to believe, that a theft of property (12.1–23.02) constituting a felony (12.1–23–05) had been committed by the defendant. Therefore, the arrest of Frye without a warrant was in conformity with Section 29–06–15(3), N.D.C.C. and the Fourth Amendment to the United States Constitution.

In arguing that the district court erred in not suppressing evidence and dismissing the complaint, Frye maintains that the three day delay between his arrest and being brought before a magistrate amounted to a deprivation of his rights.

Rule 5(a), N.D.R.Crim.P., which became effective on November 1, 1973, patterned after the first sentence of Rule 5 of the Federal Rules of Criminal Procedure, requires that an arresting officer is to take the person arrested "without unnecessary delay before the nearest available magistrate." The pertinent statute antedates the rule and thus is subject to it. The language used is similar:

"When an arrest is made by a peace officer or a private person without a warrant, the person arrested without unnecessary delay must be taken:

"1. Before the nearest or most accessible magistrate in the county where the arrest is made; or

"2. If there is no magistrate in said county qualified to act, then before the nearest or most accessible magistrate authorized to act for the county where the arrest is made." Section 29–06–25, N.D.C.C.

Not all statutory violations involve constitutional guarantees. *See State v. Rudolph,* 193 N.W.2d 237, 240–41 (N.D.1971).

What is an "unnecessary delay" is dependent upon the circumstances in each case. The term has been defined, not with reference to time as such, but with regard to whether the delay was utilized to interrogate or obtain damaging statements from the accused. *State v. Barlow,* 193 N.W.2d 455, 461 (N.D.1971); *State v. Ankney,* 195 N.W.2d 547, 552 (N.D.1972).

*State v. Barlow, supra* at 193 N.W.2d 461, acknowledges that a three-day delay "is a questionable practice" and would, in some cases, be unreasonable, but goes on to find no unnecessary delay when there was no allegation of interrogation or elicitation of damaging statements.

Since no such allegations were made in this case, we find the three-day delay between Frye's arrest and his being brought before a magistrate not such an unreasonable delay as would justify a new trial.

Frye argues that he was served with a warrant in court on October 3, 1975, by R. James Maxson, an Assistant State's Attorney, not a "peace officer", and that there was no return of the warrant, as required by Rule 4, N.D.R.Crim.P. He also claims that he was not given a copy of the complaint as prescribed in Rule 5(a), N.D.R. Crim.P.

■ Since Frye had already been properly arrested, it was not necessary to serve a warrant upon him; thus, a defect in service is not grounds for new trial. *See* Rule 5(a), N.D.R.Crim.P.

■ As to the alleged failure to furnish Frye with a copy of the complaint, a reading of the transcript of the hearing on the motion to suppress evidence and dismiss the complaint shows that Frye at that time put into evidence both the original warrant and the complaint as having been in his possession since October 3. Since the objective of the requirement that a copy of the complaint be given the defendant is notice to the defendant of the specifics of the charge, we hold that the objective was met in this instance and that accordingly the error was harmless. See Rule 52(a), N.D.R.Crim.P.

■ Frye's counsel argues that the arresting officer did not, at the time of the arrest, inform Frye of the reasons for his arrest. We think it significant that at the time of his arrest, Frye showed Deputy Taylor two deposit slips from the Alaska bank. He must have understood the reasons for his arrest or he would not have displayed those deposit slips. We find no merit in this contention.

We conclude that the District Court of Ward County committed no error in denying the Motion for Suppression of Evidence and Dismissal of the Complaint.

The second and third issues, as enumerated in Frye's brief, are argued as one contention: That evidence of a later attempt to draw a check on the same nonexistent Alaska bank account, as well as evidence of writing bad checks in Alaska, should not have been admitted at trial.

Sharon Klein and Bart Schempp, employees of the First National Bank of Minot, were allowed to testify that on September 30, 1976—three days after the incident giving rise to the complaint—James Frye attempted to deposit in his Minot bank account, a check for $8,000 drawn on the same Alaska bank as the $2,640 check of September 27. They testified that he also attempted to cash a check for $2,000 on his Minot account at that time.

Otis Swart, a vice-president of the First National Bank of Fairbanks, testified that James E. Frye opened a checking account in that bank on September 19, 1973, with a $200 cash deposit, and made only one other deposit—for $2,640 on September 21, 1973, a bad check. Swart stated that Frye also brought in a check for $8,000 to be sent to a bank in Bradenton, Florida, for collection, and that the check was no good. He testified that the Fairbanks checking account was closed on December 20, 1975, after the bank lost $4,610.25 on it.

■ The general rule is that evidence of prior acts or crimes is not admissible unless substantially relevant for some other purpose than to point out defendant's criminal character and thus to show the probability that he acted in conformity therewith. *State v. Olson*, 244 N.W.2d 718 (N.D.1976); *State v. Stevens*, 238 N.W.2d 251 (N.D. 1975).

■ The above rule, however, is often stated not as a complete rule of law, but as an introduction to its several exceptions. See *State v. Olson, supra.* The State points to three exceptions to the general rule when evidence of other acts or offenses may be admissible, such as when: (1) the evidence provides a more complete story of the crime by putting it in context of happenings near in time and place; (2) it proves the existence of a continuing plan or scheme of which the crime on trial is a part, thus tending to show intent; (3) it shows that the act on trial was not inadvertent, accidental, unintentional, or without guilty knowledge. *See* McCormick on Evidence, 2d ed., § 190.

This court has often held that evidence of other acts or crimes by the accused is admissible if relevant to facts in issue in the case at trial. *E. g., State v. Gammons*, 64 N.D. 702, 256 N.W. 163 (1934); *State v. Heaton*, 56 N.D. 357, 217 N.W. 531 (1928); *State v. Gummer*, 51 N.D. 445, 200 N.W. 20 (1924).

In *State v. Murphy,* 17 N.D. 48, 115 N.W. 84 (1908), the defendant was accused of forging another's name to a receipt. This court found that evidence of similar acts, being relevant to vitiating a claim of mistake and showing a "general plan or system" indicative of intent, was admissible. *Murphy, supra,* 115 N.W. at 87. *See also State v. Gammons, supra* (scheme to show intent); *State v. Heaton, supra* (scheme to show intent, similar acts to show knowledge); *State v. Gummer, supra* (to show complete story of the crime).

In these cases the exceptions were applied mechanically, as illustrated in *State v. Gummer, supra,* which states:

". . . evidence which under given facts might be wholly improper and prejudicial would, under other facts, fall within the legitimate range of inquiry, and be admissible *regardless of its prejudicial character.*" (Emphasis supplied.) 200 N.W. at 31.

In *State v. Stevens,* 238 N.W.2d 251 (N.D. 1975), however, we adopted a new test for determining the admissibility of evidence of other crimes or acts. *Stevens,* at 238 N.W.2d 258, subscribes to a balancing test as advanced by McCormick:

"Accordingly, some of the wiser opinions (especially recent ones) recognize that the problem is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility." McCormick on Evidence, 2d Ed., § 190, p. 453.

 Let us look at the present case in terms of the above test.

(1) "[T]he actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution . . .": In the present case there is no issue as to whether the act was done—it is the requisite intent which is in dispute. Aside from evidence of other similar acts there is nothing to dispute Frye's contentions of mistake and lack of intent.

(2) "[T]he convincingness of the evidence that the other-crimes were committed and that the accused was the actor . . .": Two bank employees testified that Frye attempted to deposit the $8,000 check and withdraw $2,000 on September 30, 1975. This transaction, in fact, is what led to his arrest. The testimony of Otis Swart as to occurrences in Alaska, preparatory to as well as similar to the crime charged, was accompanied by supportive bank records documenting the charges made.

(3) "[T]he strength or weakness of the other-crimes evidence in supporting the issue . . .": The fundamental issue to which the evidence in question was offered is that of intent; an essential element of the crime charged. A view of circumstances immediately attendant to the incident giving rise to the complaint, and no more, could well have been insufficient to lead a jury to find the necessary intent. The evidence of other acts tended to develop latent details giving the fact finder a more complete understanding of James Frye's actions on September 30, 1975. A cyclic chain of transactions may be observed. Mr. Otis Swart, the bank officer from Alaska, testified that: James Frye opened a bank account in Alaska with a $200 cash deposit; two days later he deposited a bad check for $2,640 and obtained a receipt; later he brought in a bad check for $8,000 to be sent to a bank in Florida for collection; and, in the meantime, he wrote thousands of dollars worth of checks on the account.

Two years later he opened an account in a Minot bank with a $60 cash deposit. Five days thereafter he deposited a check for $2,640 drawn on the closed Alaska bank account—the same sum deposited in Alaska. At the same time he withdrew $1,800 on the strength of his deposit. Two days later he withdraw $700, showing his receipt for $2,640. The next day he attempted to de-

posit an $8,000 check drawn on the Alaska bank, and at the same time withdraw $2,000. He showed the two year old receipts from Alaska in an attempt to convince the teller to accept the deposit.

We believe that these facts completed the story of the crime, indicating a scheme or continuing plan which tended to negate the claim of lack of knowledge and intent.

(4) "[T]he degree to which the jury will probably be roused by the evidence to overmastering hostility.": The tendency for the jury to be affected by the evidence was present, but in light of the admonition given to the jury to consider other acts as evidence of intent or of a scheme only, we think the evidence of other acts was proper in this case.

After balancing the probative value of the evidence against its prejudicial effect, we conclude that it was properly admitted.

For the reasons stated herein, the judgment of the trial court is affirmed.

VOGEL, PEDERSON, PAULSON and SAND, JJ., concur.